UNITED STATES of America,
Plaintiff–Appellee,

v.

Mahmoud SAFARI,
Defendant–Appellant.

No. 87–5629.

United States Court of Appeals,
Fourth Circuit.

Argued April 8, 1988.

Decided June 20, 1988.

Rehearing and Rehearing In Banc
Denied July 27, 1988.

**892**

Andrew Michael Sacks (Michael F. Imprevento, Sacks & Sacks, Norfolk, Va., on brief), for defendant-appellant.

Albert David Alberi, Sp. Asst. U.S. Atty., Virginia Beach, Va., (Henry E. Hudson, U.S. Atty., Alexandria, Va., on brief), for plaintiff-appellee.

Before WILKINS, Circuit Judge, BUTZNER, Senior Circuit Judge, and WILLIAMS, United States District Judge for the Eastern District of Virginia, sitting by designation.

WILKINS, Circuit Judge:

Mahmoud Safari appeals convictions of several drug-related offenses. 21 U.S.C.A. §§ 841(a)(1), 843(b), 846 (West 1981) and 952 (West 1981 & Supp.1988); 18 U.S.C.A. § 2 (West 1969). We affirm.

## I.

While the evidence produced at trial was conflicting, we are required to view it in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Adhering to this principle, the evidence shows that on December 18, 1984, a United States Customs Service mail investigator at John F. Kennedy International Airport assigned to examine incoming international mail parcels noticed a package addressed in English to "M. Sagadi, Post Office Box 61363, Virginia Beach, Virginia 23464, USA." The package bore a return address written in a foreign language and the postmark showed Pakistan as the country from which the package was mailed.

After squeezing the package and noticing a "powdery" or soft texture to the contents, the Customs investigator pierced the parcel with a thin knife. Examination of the blade revealed the presence of dust which field tested positive for heroin. The package was opened and a book was discovered, with heroin concealed in its cover. The Customs investigator removed the package from the stream of mail, secured it and delivered the locked parcel to a postal inspector.

The postal inspector subsequently delivered the parcel to Drug Enforcement Administration officials who determined that it contained approximately 97 grams of 63 percent pure heroin. Most of the heroin was removed and replaced with chocolate powder. The package was then routed to the Virginia Beach postal service for delivery to the original addressee. Although the package was addressed "M. Sagadi," post office box 61363 was the box rented by Safari.

On February 3, 1985, a call slip was placed in Safari's box notifying him that he had received a package. On February 5, 1985, Safari presented the slip to the postal clerk and identified himself as the addressee Sagadi. After the postal clerk delivered the package to him, Safari exited the post office and drove away in his vehicle. He was stopped by a surveillance team after driving a short distance and the package was removed from the trunk area of the hatchback vehicle he was driving.

Safari was subsequently charged by the Commonwealth of Virginia with possession of heroin with intent to distribute. Following his arrest, a search warrant was issued by a state magistrate and executed at his residence where several letters originating from Pakistan were seized. These letters, addressing Safari as "cousin," detailed plans to smuggle drugs to Safari in a book.

Prior to trial Safari moved to suppress the seized items, contending that the

search warrant was invalid for lack of probable cause. A state court granted Safari's motion and the Commonwealth's charges against Safari were dropped through entry of a nolle prosequi.

Safari was subsequently indicted by a federal grand jury in the Eastern District of Virginia on three counts of drug-related violations stemming from the same transaction alleged in the state court charges. Following a jury trial, Safari was convicted of all counts. He raises several issues on appeal which we address seriatim.

## II.

Safari contends that the district court erred in failing to apply collateral estoppel to his motion to suppress. He argues that the issues of the validity of the warrant and the search pursuant to it were fully litigated in state court and that this determination barred relitigation of these issues in federal court. The government, while conceding that collateral estoppel may apply in criminal prosecutions under some circumstances, argues that this doctrine is inapposite in this instance because there is not an identity of parties.

The Second Circuit was faced with this precise issue in *United States v. Mejias*, 552 F.2d 435 (2d Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977), and held that a prior state court grant of a motion to suppress did not foreclose a federal prosecution arising from the identical set of facts. In so finding, the court stated:

> It was, therefore, entirely proper for the federal government to defer to the state exercise of prosecutorial power over appellants without foregoing its right to proceed against them if at any time it became advisable to do so. When the success of the state prosecution was seriously jeopardized by the state court suppression ruling (a ruling we hold to have been erroneous), it became the clear duty of the federal authorities to proceed against the individuals involved, including these appellants.

*Id.* at 441.

We agree with the analysis of the Second Circuit and hold that collateral estoppel

does not apply here because the federal government was not a party in the state court action. *Id.* at 444; *see also United States v. Brown*, 604 F.2d 557, 559 (8th Cir.1979). This holding is supported by our examination of other cases in which the federal government commenced prosecution after unsuccessful state actions. *See, e.g., United States v. Jones*, 808 F.2d 561 (7th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1630, 95 L.Ed.2d 203 (1987); *United States v. Bledsoe*, 728 F.2d 1094 (8th Cir.), *cert. denied*, 469 U.S. 838, 105 S.Ct. 136, 83 L.Ed.2d 76 (1984).

Safari asserts that despite the fact that the prosecutions were undertaken by different sovereigns, the federal government should be bound by the earlier state court ruling because the Assistant Commonwealth's Attorney was appointed as a Special Assistant United States Attorney for the prosecution of this case. This appointment, which was subsequent to the state court action, is a function of the executive branch and does not retroactively make the federal government a party to an earlier state court proceeding.

## III.

Safari maintains, in the alternative, that the district court erred in admitting the fruits of the search of his residence because the affidavit supporting the warrant lacked probable cause. To the contrary, the affidavit spelled out in detail the facts recited above which led to Safari's arrest. In addition, the warrant correctly listed "[a]ny correspondence to or from Pakistan relating to drug transactions" as one of the items for which the law enforcement officers were authorized to search. It also particularly described the place to be searched, "110 First Colonial Road Apt. B, City of Va. Beach, Va.," which, as the affidavit stated, had been identified as Safari's residence after several weeks of surveillance. The district court did not err in rejecting Safari's motion to suppress for lack of probable cause.

## IV.

Safari's next contention of error is that the warrantless opening of the parcel

at the airport by United States Customs authorities violated the fourth amendment. The district court correctly found the search valid under the principle enunciated in *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977).

The Court in *Ramsey* applied a "reasonable cause to suspect" standard for the search of international parcels entering this country. This standard, codified at 19 U.S. C.A. § 482 (West 1978), authorizes border searches of parcels where there is an indication that contraband is enclosed. In *Ramsey*, reasonable cause arose from the fact that the letters were from a source country, were heavier than normal letters, and felt as if they contained something other than correspondence. 431 U.S. at 614. Here, the package opened by the mail investigator originated from a known source country for drugs and felt "powdery" when squeezed. This justified the limited intrusion into the package with a thin knife which conclusively showed that some amount of heroin was contained in the parcel.

Although Safari concedes that the district court applied the correct standard regarding the initial opening of the package, he argues that the testimony established that the United States Customs mail investigator had been instructed to open every parcel from Pakistan notwithstanding its appearance. We need not address the question of whether the opening of every package is reasonable. *Cf. United States v. Glasser*, 750 F.2d 1197 (3d Cir.1984). Here, the inspector articulated factors which justified his actions under *Ramsey* and the district court did not err in finding that there was reasonable cause for the warrantless opening of this particular package.

### V.

Safari also claims that the district court erred in admitting several letters seized from his residence. He contends that the letters constituted hearsay evidence and that there is no evidence that he ever read the correspondence which described plans to smuggle drugs hidden in a book. The letters were seized from a briefcase found in Safari's bedroom, along with several open envelopes which were postmarked Karachi, Pakistan, the city from which the package containing heroin originated. The seized letters, which detailed plans to smuggle drugs concealed in a book, were written in an Iranian language and referred to Safari as "cousin."

The district court correctly found that the letters did not constitute hearsay evidence because they were not offered to prove the truth of the matter asserted. Instead, the letters were admitted to show Safari's knowledge that the package delivered to his post office box and retrieved by him contained drugs. Safari's contention that there was no evidence that he ever read the letters is also meritless in light of the evidence that the correspondence was open when discovered by law enforcement officials. The district court did not err in overruling Safari's objection to the admissibility of the letters.

### VI.

The district court also allowed, over Safari's objection, testimony from a postal clerk that he had received a telephone call between Christmas 1984 and New Year's Day 1985 inquiring whether there was a package for post office box 61363. The caller did not identify himself, but the postal worker stated that the speaker had a "foreign type voice."

Testimony regarding the identity of a speaker in a telephone conversation may be admissible even if the caller cannot be identified by voice identification if there is sufficient circumstantial evidence to support the connection. *United States v. Espinoza*, 641 F.2d 153, 170 (4th Cir.), *cert. denied*, 454 U.S. 841, 102 S.Ct. 153, 70 L.Ed.2d 125 (1981). It is undisputed that the post office box about which the caller inquired was rented exclusively to Safari, who is a native of Iran. Moreover, it is clear that had the package not been intercepted by the authorities, it would have reached Safari's post office box at approximately the time of the telephone call. In

light of this circumstantial evidence connecting the events we find there was no abuse of discretion.

## VII.

■ At trial an expert witness testified that the amount of heroin found in the package would break down into 13,200 individual doses. Safari argues that this testimony invaded the province of the jury's factfinding mission regarding the intent to distribute element and that it was unduly prejudicial requiring exclusion under Federal Rule of Evidence 403.

This argument is unavailing. The expert witness did not offer inflammatory statements or venture a general conclusory opinion. While not usurping the function of the jury, this testimony aided the jury during its deliberations, for most laymen are not familiar with the quantity, purity and dosage units of heroin. *See United States v. Monu,* 782 F.2d 1209, 1210–11 (4th Cir.1986). Clearly, the fact that the heroin would produce thousands of individual doses is relevant to the factfinder in deciding, after it is determined that Safari illegally possessed the heroin, whether he did so for personal consumption or for distribution. *United States v. Pugliese,* 712 F.2d 1574, 1582 (2d Cir.1983).

## VIII.

■ During his opening statement, the prosecutor remarked that he expected the defense to claim that Safari simply received the parcel in his post office box without any knowledge of the contents. Safari argues that this statement constitutes an impermissible comment on the exercise of his fifth amendment privilege in light of his subsequent decision not to testify and that his motion for a mistrial should have been granted.

This court has stated that such a remark should be scrutinized to determine whether "the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." *United States v. Whitehead,* 618 F.2d 523, 527 (4th Cir.1980) (emphasis omitted) (quoting *United States v. Anderson,* 481 F.2d 685, 701 (4th Cir.

1973), *aff'd* 417 U.S. 211, 94 S.Ct. 2253, 41 L.Ed.2d 20 (1974)). An examination of the record reveals clearly that the comment's effect did not rise to this level.

Safari's defense at trial was as predicted by the prosecutor, namely that he innocently received the package addressed to his post office box. Indeed, this was the major thrust of his attorney's closing argument. It is therefore doubtful that the jury construed the comment as relating to Safari's failure to testify. At best the statement called for curative instructions. In the absence of a request for such, no reversible error occurred.

## IX.

■ Finally, Safari challenges the sufficiency of the evidence for his convictions. He contends that there was no showing that he was expecting to receive a package containing narcotics.

The evidence showed that Safari was the sole renter of the post office box to which the package containing heroin was addressed. He arrived in person to pick up the package and falsely identified himself as the addressee, M. Sagadi. After exiting the post office, he placed the package in the rear of his vehicle. The surveillance team stopped Safari's vehicle a short distance from the post office and retrieved the package from the car. At the point of seizure the officers observed that the package had been opened in such a way that it was clear that a book was enclosed.

Finally, opened letters seized from Safari's residence stated in part:

Mahmoud, as soon as you receive this letter, call me at 431572; the reason is that I want to make sure that your address is the same or has been changed because I want to send you 2–3 books.... [W]hen you call and I am sure that your address is correct, I have made a book in which I have trafficked 90 gram of bang in the front. I am going to send it to you.

The evidence against Safari, most notably these letters seized from his residence, sufficiently demonstrates his knowledge that

he was retrieving a parcel containing drugs secreted in the cover of a book.

AFFIRMED.