**UNITED STATES of America, Plaintiff,**

v.

**Marshall Edward BELCHER
and Patrick Lee Belcher,
Defendants.**

**Crim. No. 89–00156–B.**

United States District Court
W.D. Virginia,
Big Stone Gap Division.

May 13, 1991.

Julie M. Campbell, Asst. U.S. Atty., Abingdon, Va., for plaintiff.

Fredrick A. Rowlett, Abingdon, Va., Gregory D. Edwards, Jonesville, Va., for defendants.

### MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case is before the court on the United States's "Application For An Order Amending The Memorandum Opinion Entered On March 13, 1991." The court will deny the Application.

## FACTUAL AND PROCEDURAL BACKGROUND

Tim McAfee ("McAfee") is the Commonwealth's Attorney for Wise County, Virginia. He is also a Special Assistant United States Attorney for the Western District of Virginia. During 1988 and 1989, McAfee, as Commonwealth's Attorney, unsuccessfully prosecuted the brothers Belcher, Marshall Edward ("Eddie") and Patrick Lee ("Patrick"), in the Circuit Court of Wise County, Virginia.

The State prosecutions proceeded as follows: McAfee secured separate, identical, two-count indictments against Eddie and Patrick for manufacturing marijuana and using a firearm in the commission of a felony (i.e., manufacturing marijuana). McAfee proceeded against the brothers separately. For some reason, State officials destroyed the alleged marijuana the brothers were accused of manufacturing. The State officials performed no tests of any sort on the alleged marijuana prior to destroying it.

Seizing on the fact of the alleged marijuana's destruction, Patrick moved to have his indictment dismissed based, *inter alia*, on a State law that prohibits the destruction of evidence "until all rights of appeal have been exhausted." Va.Code Ann. § 18.2–253 (Supp.1990). On November 16, 1988, the State court held a hearing where both Patrick and McAfee were heard.

On November 18, 1988, the Honorable J. Robert Stump, Circuit Court Judge of Wise County, Virginia, issued an opinion and order dismissing the indictment against Patrick. Judge Stump's order stated that "[t]his cause came to be heard on defendant's motion to dismiss the indictment for lack of due process to the defendant.... This court orders that this indictment be dismissed and the case be filed among the ended causes." In his opinion, Judge Stump held that

> [t]here was no bad faith nor misconduct by the narcotics officers in destroying the plants pursuant to court order at the time when the person from whom seized was unidentified.... Although the

court finds no bad faith, the court does not find good faith here either.

*Virginia v. Belcher*, No. F88–140, slip op. at 1 (13th Jud.Cir. Nov. 18, 1988) (citations omitted). Nevertheless, Judge Stump dismissed the indictment, citing the State law prohibiting destruction of evidence and the fact that destruction of the evidence violated Patrick's right to due process. *Id.*, slip op. at 2 (citing, as to due process, *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)). McAfee sought to appeal the State court's dismissal of the indictment, but his appeal was not timely and the dismissal stood.

Eddie waited until the beginning of his trial to raise the issue of the destroyed plants, but the State court ruled that his motion was untimely. For reasons not material here, McAfee nolle prossed the second (firearms) count in the indictment, and Eddie was convicted of the first count of manufacturing marijuana. Eddie moved the State court for a new trial and the motion was granted on grounds unrelated to the destroyed plants. McAfee nolle prossed the indictment against Eddie, then secured another indictment against him charging him with manufacturing marijuana and conspiring to manufacture marijuana. Eddie, relying on the fact of the alleged marijuana's destruction, then sought the dismissal of the second indictment. However, the State court delayed ruling on Eddie's motion until it could conduct an evidentiary hearing.

While Eddie's motion was pending, the United States Justice Department formally appointed McAfee a Special Assistant United States Attorney on June 9, 1989. Subsequently, McAfee drafted a three-count federal indictment against both Eddie and Patrick. In separate letters to Assistant United States Attorney Jerry Kilgore and to former United States Attorney John Perry Alderman, McAfee sought their support for this indictment. In his letter to Kilgore, McAfee indicated that he expected the State court to dismiss the indictment against Eddie. In both letters, McAfee indicated his willingness to handle the prosecution of the Belchers. After learning that the United States Attorney's office

would submit his indictment to the federal grand jury, McAfee moved to nolle pross the indictment pending against Eddie in State court. Over Eddie's objection, the State court granted McAfee's motion on December 5, 1989.

A federal grand jury returned the indictment McAfee prepared as a true bill on December 15, 1989. It charged that the Belchers conspired to manufacture and possess marijuana with the intent to distribute the marijuana, that the Belchers manufactured marijuana, and that the Belchers used or carried a firearm in relation to a drug-trafficking crime.

Eddie and Patrick each moved to dismiss the indictment based on vindictive and selective prosecution, and because of double jeopardy, all in violation of their fifth amendment rights. On September 10, 1990, the court held a hearing on the brothers' motions to dismiss. On March 13, 1991, the court by published opinion dismissed the indictment against the brothers. As to both brothers, the court ruled *sua sponte* that prosecution following the destruction of the alleged marijuana would violate due process. As to Patrick alone, the court ruled that collateral estoppel prevented his prosecution. As to Eddie alone, the court ruled that it would be vindictive for McAfee to prosecute Eddie for anything more that a single count of manufacturing marijuana.

On March 25, 1991, the United States filed its Application, which asks the court to amend its opinion and to reinstate the indictment against the brothers. Essentially, the United States asks the court to acknowledge that the court's entire opinion is incorrect, for the government attacks the court's conclusions concerning vindictive prosecution, collateral estoppel, and the due process issues surrounding the destruction of the alleged marijuana. It seems to the court that the government's objections are more appropriate for an appeal to the United States Court of Appeals for the Fourth Circuit; nevertheless, the court will address the government's arguments.

## ANALYSIS

### I. VINDICTIVE PROSECUTION

In refusing to alter its ruling regarding vindictive prosecution, the court primarily rests on the reasoning contained in its prior opinion in this case. However, the court does wish to address the United States's assertion that it, and not McAfee, was the "prosecuting entity" at the federal level. The facts (especially those found in the letters from McAfee to Tucker and Kilgore) set out above show that whether Eddie appeared in State or federal court, he would see McAfee sitting at the prosecutor's table as lead prosecutor. Moreover, it was McAfee who drafted the federal indictment containing the enhanced charges against Eddie. Based on all this, it seems to the court that it is disingenuous for the government to argue that McAfee was not responsible for the United States's actions. The court will not alter its finding that McAfee was the preeminent prosecutor at both the State and federal levels.

### II. COLLATERAL ESTOPPEL

■ In its prior opinion, the court was faced with the fact that McAfee had the ability to move easily between State and federal court. The court felt that this easy movement raised serious questions of constitutional moment. Analyzing McAfee's movement between the courts in light of the United States Supreme Court's teachings in *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and *United States v. Wheeler*, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978), the court concluded that McAfee's federal prosecution of Patrick, being only a "sham and a cover" for his prior, unsuccessful prosecution of Patrick in State court, was not distinguishable from the State prosecution under the concept of dual sovereignty. The court then held that collateral estoppel prohibited McAfee from further prosecution of Patrick.

In urging the court to reverse its collateral estoppel holding, the United States cites *United States v. Safari*, 849 F.2d 891 (4th Cir.), *cert. denied*, 488 U.S. 945, 109

S.Ct. 374, 102 L.Ed.2d 363 (1988). In that case, an Assistant Commonwealth's Attorney ("ACA") unsuccessfully prosecuted Safari in Virginia's courts. The ACA then was appointed a Special Assistant United States Attorney for the sole purpose of prosecuting Safari in federal court. The Fourth Circuit held that "[t]his appointment, which was subsequent to the state court action, is a function of the executive branch and does not retroactively make the federal government a party to an earlier state court proceeding." *Id.*, 849 F.2d at 893.

The court was not aware of *Safari* when it wrote its first opinion in this case. However, knowledge of *Safari* does not change the court's conclusion regarding collateral estoppel. It should be noted that *Safari* offers no citations for its expansive comment regarding executive branch functions. In the face of this omission, the court cannot ignore the Supreme Court's teachings in *Bartkus* regarding the possibility of a breakdown in dual sovereignty. Thus, given *Bartkus'* teaching, the court refuses to view *Safari* as the Fourth Circuit's final determination that the mere timing of a State prosecutor's appointment as a Special Assistant United States Attorney forecloses judicial inquiry into whether a person's rights have been violated by a breakdown of dual sovereignty. Accordingly, the court declines to modify its ruling regarding collateral estoppel.

## III. DUE PROCESS AND THE DESTROYED PLANTS

■ It will be remembered that State officials intentionally destroyed the alleged marijuana the Belchers allegedly cultivated. In its Memorandum of Points and Authorities, the United States seeks two modifications regarding the destroyed plants: (1) a determination whether the State officials acted in good or bad faith and, if the court finds good faith, (2) the chance to present the testimony of the officials to a jury.

In ruling that the destruction of the plants violated the Belchers' due process rights, the court held inapplicable *Arizona*

*v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) (to prove a violation of his due process rights, a defendant must show that destruction by State officials of certain kinds of evidence was done in bad faith):

> Based on this scrutiny of the facts and language in *Youngblood*, the court is persuaded that the Supreme Court did not intend for the *Youngblood* caveat to apply to every instance where State officials intentionally destroy evidence that is material to a defendant's guilt or innocence. In a case where State officials intentionally destroy evidence that is absolutely crucial and determinative to a prosecution's outcome, the court holds that the *Youngblood* caveat does not apply.

*United States v. Belcher*, 762 F.Supp. 666, 672 (W.D.Va.1991).

The court declines to modify its holding regarding *Youngblood's* inapplicability. By its terms, the court's prior opinion establishes the propositions that *Youngblood's* bad faith requirement does not apply to every instance of evidence destruction by State officials, and that this case presents one of the instances where *Youngblood* does not apply. The United States has offered no argument why this holding should be disturbed.

Similarly, the prior opinion stands for the decidedly common proposition that some evidence simply cannot go to the jury. Having ruled that *Youngblood* did not apply here, the court applied the test the Supreme Court announced in *Trombetta*, 467 U.S. at 489, 104 S.Ct. at 2534, to determine if the evidence the State law officials destroyed was "constitutional[ly] material[ ]." The *Trombetta* test showed that the evidence was constitutionally material. Holding that the alleged marijuana's destruction violated the Belchers' rights to due process, the court dismissed the indictment against them. The United States has offered no argument or authority to refute the court's application of the *Trombetta* test. Accordingly, the court rests on the reasoning found in the prior opinion in denying the government's request that the

State officials' testimony regarding the alleged marijuana be heard by a jury.

The court wishes to make one more point. The bottom line regarding the destroyed plants is that no person should be convicted, or even tried, on tainted evidence. When State officials destroyed the alleged marijuana, the evidence in a sense became "tainted." After the destruction of the plants, the *only* evidence of marijuana in the case was that of the State officials, who would undoubtedly testify that the destroyed plants were indeed marijuana. As the court noted in endnote four of its prior opinion, an expert witness testifying for the government in an unrelated case "reported that he had received plants from law enforcement officers who 'swore' that the plants were marijuana. When tested, the plants turned out not to be marijuana." The court assumes that the government could produce another expert to refute the opinion of the expert quoted above. But if this were to happen, would it be ethical? The court thinks not. Moreover, knowing what it knows regarding the testimony of expert *government* witnesses, could the court, faced with a Fed.R.Crim.P. 29(a) motion, ever say that the government had carried its burden of producing sufficient evidence to allow the case to go to a jury? Again, the court thinks not. The Belchers are entitled to due process. If they are tried on these charges, their rights to due process will be abridged.

### CONCLUSION

Based on the factual background, analysis, and conclusions set out above, the court denies the United States's "Application For An Order Amending The Memorandum Entered On March 13, 1991." The court will enter an appropriate Order.