955 F.2d 674
 UNITED STATES of America, Plaintiff-Appellee,
v.
Louis PERCHITTI, Jr., a/k/a Sonny, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gerald Lamar WHITE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Walter JONES, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Margaret Marie REYNOLDS, Defendant-Appellant.
 Nos. 90-3336, 90-3338,
90-3339 and 90-3358.
 United States Court of Appeals,
Eleventh Circuit.
 March 9, 1992.
 
 Samuel Mandelbaum, Tampa, Fla., for defendants-appellants in all cases.
 Andrea Wilson, Asst. Federal Public Defender, Tampa, Fla., for Louis Perchitti.
 Jack T. Edmund, Ft. Meade, Fla., for Gerald Lamar White.
 C. Nathaniel White, Ft. Meade, Fla., for James Walter Jones.
 Walter Furr, Karla Spaulding, Tamra Phipps, Asst. U.S. Attys., Tampa, Fla., for plaintiff-appellee in all cases.
 Appeals from the United States District Court for the Middle District of Florida.
 Before ANDERSON and DUBINA, Circuit Judges, and ESCHBACH*, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge:
 
 
 1
 The United States indicted[1] James Walter Jones ("Jones"), Gerald Lamar White ("White"), Margaret Marie Reynolds ("Reynolds"), and Louis Perchitti, Jr. ("Perchitti") (collectively, the "defendants") on charges of conspiracy to possess with intent to distribute cocaine, see 21 U.S.C. §§ 841(b)(1)(B) & 846, and possession with intent to distribute cocaine, see 18 U.S.C. § 2; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). After the District Court denied the defendants' motions to suppress evidence,[2] White, Jones and Perchitti pleaded guilty to the charges, and reserved their rights to appeal from the denial of their motions to suppress. Reynolds maintained her innocence and proceeded to trial; the jury returned verdicts of guilty on both counts charged. This consolidated appeal followed.
 
 
 2
 After fully considering all the issues raised by the defendants on appeal, we find no reversible error in the District Court's denial of the defendants' suppression motions or in Reynolds' jury trial. Accordingly, we affirm the District Court in all respects. We write only on the "collateral estoppel" issue raised by Reynolds. See Circuit Rule 36-1.
 
 
 3
 Reynolds asserts that the District Court erred in failing to apply collateral estoppel, more accurately termed "issue preclusion," to her motion to suppress. The state of Florida originally indicted Reynolds for the same conduct that supports the federal prosecution. In the state action, the judge granted Reynolds' motion to suppress evidence, and the state prosecutor, Darrell Dirks, then filed a nolle prosse. R. 63, Exhibit A. Federal authorities subsequently indicted Reynolds and appointed Dirks as a "Special Assistant United States Attorney" for purposes of the federal prosecution. In contrast to the state court, however, the District Court denied the defendants' motions to suppress evidence. The District Court declined to apply issue preclusion to prevent the United States from re-litigating the suppression issue in federal court. We agree with the District Court that Reynolds failed to demonstrate one of the necessary prerequisites for issue preclusion in this context: privity between the federal and state governments.
 
 
 4
 Whether issue preclusion may apply in the criminal context to bar one governmental entity from relitigating a pretrial suppression order previously rendered against another governmental entity is an open question. Judge Friendly, writing for the Second Circuit, has suggested that due process requires that issue preclusion be applied to prohibit a governmental entity from relitigating a pretrial suppression order in a criminal case. United States ex rel. DiGiangiemo v. Regan, 528 F.2d 1262, 1265-67 (2d Cir.1975), cert. denied, 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976); accord United States v. Evans, 655 F.Supp. 243 (E.D.La.1987). The First and the Fourth Circuits have recognized that issue preclusion may apply in the criminal context, but have not conclusively decided this issue. See United States v. Safari, 849 F.2d 891 (4th Cir.), cert. denied, 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988); United States v. Bonilla Romero, 836 F.2d 39 (1st Cir.1987), cert. denied, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988). Both Safari and Bonilla Romero found it unnecessary to decide the issue because the federal government was not a party nor in privity with a party in the prior state court action in either case. Safari, 849 F.2d at 893; Bonilla Romero, 836 F.2d at 43. See generally 1B J. Moore, J. Lucas & T. Currier, Moore's Federal Practice pp 0.441, 0.443 (2d ed. 1984) (party to be precluded from relitigating an issue decided in a previous litigation must be a party or in privity with a party to prior litigation). As in Safari and Bonilla Romero, we need not decide the applicability of issue preclusion to successive criminal prosecutions by multiple sovereigns, because there was no privity between Florida and the United States in this case.
 
 
 5
 In attempting to identify the nexus necessary between two parties to justify finding them in "privity," several factors are relevant. Privity may be found where a non-party substantially controls, or is represented by, a party to the action. Restatement (Second) of Judgments §§ 39, 41 (1982); Montana v. United States, 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979). Another formulation requires that the party estopped must have been "so closely related to the interest of the party to be fairly considered to have had his day in court." Bonilla Romero, 836 F.2d at 39; In re Gottheiner, 703 F.2d 1136 (9th Cir.1983). Still another derivative is that there must be a "substantial identity" of the parties such that the party to the action was the virtual representative of the party estopped. Aerojet-General Corp. v. Askew, 511 F.2d 710, 719 (5th Cir.), cert. denied, 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975). Furthermore, when the parties at issue are sovereigns, the Supreme Court's teaching in the double jeopardy context[3] arguably provides additional guidance for our privity inquiry. In Bartkus v. Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), Bartkus was first acquitted by a federal district court on robbery charges, then subsequently convicted for the same conduct by an Illinois criminal court. Although Justice Frankfurter upheld the successive state prosecution,[4] he indicated that a second prosecution may be barred where one prosecuting sovereign can be said to be acting as a "tool" of the other, or where the second prosecution amounts to a "sham and cover" for the first. Bartkus, 359 U.S. at 123-24, 79 S.Ct. at 678.[5]
 
 
 6
 In support of her assertion of privity, Reynolds points to the fact that Dirks prosecuted the state action and then was appointed as a Special Assistant United States Attorney for the prosecution of the federal case.[6] Had Dirks worn both hats simultaneously, this might have been a closer question. See United States v. Belcher, 762 F.Supp. 666 (W.D.Va.) (federal prosecution found a sham and cover for prior unsuccessful state prosecution where prosecutor has ability to function (and did function) as a prosecutor at both the state and federal levels simultaneously), mod. denied, 769 F.Supp. 201 (W.D.Va.1991). But Dirks had no "ability to move easily between State and federal court," see Belcher, 769 F.Supp. 201, because the state action had been dismissed prior to the initiation of the federal case. That the same individual wore two hats, but at different times, is not by itself a sufficient demonstration of privity. See Safari, 849 F.2d at 893 (state prosecutor's appointment as Special Assistant United States Attorney subsequent to state court action does not retroactively make United States party to earlier state court proceeding).
 
 
 7
 Reynolds also makes the bare assertion in her brief that "it was federal DEA [Drug Enforcement Administration] agents that actively instigated, participated in and directed the state's investigation." Brief of Appellant at 33. After a full review of the record, we discern only minor involvement of DEA agents in the Tampa Police Department's investigation of the defendants.[7] First, in their application to the state court for authorization to initiate electronic surveillance of Jones and White's phones, the Tampa police relied on certain background information provided by DEA agents. See December 16, 1988 Application for Order (3d Supp.Volume). This background information was developed by the DEA's Detroit, Michigan office from 1983 to 1987, and was based on information received from confidential informants regarding Jones' (and his associates') drug activities in the Detroit area. Second, the DEA initiated electronic surveillance at Jones' Michigan apartment on December 11, 1987. This surveillance was terminated on January 8, 1988, over eleven months before the Tampa Police Department's initial wiretap, although summaries of the DEA's surveillance efforts were provided to the Tampa police. This level of cooperation between federal and state authorities in investigating the defendants does not establish privity between the state and federal governments for purposes of prosecution. Bartkus, 359 U.S. at 123, 79 S.Ct. at 678 (conventional practice of federal and state cooperation does not support claim that state prosecution was "merely a tool" of the federal authorities); accord United States v. Bernhardt, 831 F.2d 181, 182 (9th Cir.1987); Moore, 822 F.2d at 38.
 
 
 8
 We agree with the District Court that Dirks' role in the subsequent federal prosecution is an insufficient basis for the application of issue preclusion against the United States. Moreover, we are convinced that the investigatory cooperation we note between the Tampa police and the DEA does not undermine the propriety of the District Court's conclusion. The United States is entitled to its full day in court. Issue preclusion does not apply in this case to bar the United States from litigating the suppression issue in its federal proceeding against Reynolds. For the foregoing reasons, the judgment of the District Court is AFFIRMED.
 
 
 
 *
 Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation
 
 
 [1]
 The federal indictment was filed on August 16, 1989 against Jones, White and Reynolds. On October 5, 1989, the government indicted Perchitti on a new conspiracy charge and reindicted Jones, White and Reynolds on the original charges
 
 
 [2]
 Jones and White filed motions to suppress the fruits of electronic surveillance, pursuant to court orders, of their telephones. Reynolds filed a similar motion, as well as a motion to suppress evidence obtained on January 26, 1989, including the cocaine that was seized from the car that she drove to Jones' residence in Tampa that night. Perchitti joined the motions of his co-defendants
 
 
 [3]
 In Reynolds' case, jeopardy did not attach in the state proceeding because trial never commenced. Her charges were dismissed immediately after the judge granted her motion to suppress evidence. See Willhauck v. Flanagan, 448 U.S. 1323, 1325-26, 101 S.Ct. 10, 11-12, 65 L.Ed.2d 1147 (1980) (jeopardy attaches when a trial commences, that is, when a jury is sworn or empaneled or, in a bench trial, when the judge begins to hear evidence)
 
 
 [4]
 The Supreme Court has repeatedly held that successive prosecutions based on the same conduct are permissible if brought by separate sovereigns. United States v. Wheeler, 435 U.S. 313, 98 S.Ct. 1079, 55 L.Ed.2d 303 (1978); United States v. Lanza, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922) ("dual sovereignty" doctrine provides that "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each")
 
 
 [5]
 Several courts have used the language in Bartkus as the basis for recognizing a narrow exception to the dual sovereignty doctrine where the collusion between the federal and state authorities is such that dual sovereignty is blurred and the power of a "central government" is wielded against a citizen. E.g., United States v. Moore, 822 F.2d 35, 38 (8th Cir.1987); United States v. Aboumoussallem, 726 F.2d 906, 910 (2d Cir.1984); United States v. Aleman, 609 F.2d 298, 309 (7th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980); United States v. Richardson, 580 F.2d 946, 947 (9th Cir.1978), cert. denied, 439 U.S. 1068, 99 S.Ct. 835, 59 L.Ed.2d 33 (1979); United States v. Liddy, 542 F.2d 76, 79 (D.C.Cir.1976). But see United States v. Patterson, 809 F.2d 244, 247 n. 2 (5th Cir.1987) (questioning whether such an exception exists)
 See also United States v. Hayes, 589 F.2d 811, 818-19 (5th Cir.1979) (upholding dual sovereignty doctrine in double jeopardy context and also briefly noting that collateral estoppel would not apply because the federal government was not a party to an earlier state prosecution). Fifth Circuit decisions rendered prior to October 1, 1981 are precedent for this Circuit. See Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir.1981).
 
 
 [6]
 We note that Mr. Walter Furr of the United States Attorney's Office also participated in the federal prosecution of the defendants in addition to Dirks
 
 
 [7]
 Apparently Reynolds raises this assertion of DEA agent involvement for the first time on appeal. Giving the benefit of the doubt to Reynolds, we consider this evidence only because it is located in the electronic surveillance applications, which were before the District Court when it decided Reynolds' case