**UNITED STATES of America,**
**Appellant,**

v.

**James L. DAVIS, John L. Furyck and Linton Ivery, Defendants–Appellees.**

**No. 1261, Docket 90–1031.**

United States Court of Appeals, Second Circuit.

Argued June 1, 1990.

Decided June 20, 1990.

Patty Merkamp Stemler, Atty. U.S. Dept. of Justice, Washington, D.C. (Frederick J. Scullin, U.S. Atty. N.D.N.Y., Donald T. Kinsella, Asst. U.S. Atty., of counsel), for appellant.

Robert C. Hunter (Davis & Trotta, Millerton, NY, of counsel), for defendant-appellee James L. Davis.

Raymond A. Kelly, Jr., Albany, N.Y., for defendant-appellee John L. Furyck.

Richard L. Mott, Albany, N.Y., for defendant-appellee Linton Ivery.

Before KAUFMAN, KEARSE and MINER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

As the challenge facing the nation's law enforcement authorities has grown in sophistication and complexity, cooperation between federal and local agencies has become increasingly important and increasingly commonplace. In particular, joint federal-state operations have proved a crucial weapon in the long struggle against those who deal in illegal drugs. The question before us today is under what circumstances such cooperation becomes so close that the federal government should be bound by a determination in a state case. Specifically, should suppression of evidence in a state case require the suppression of that same evidence in a later federal prosecution against the same defendants?

*Background*

This case arises from an investigation into illegal narcotics trafficking conducted by the Capital District Drug Enforcement Task Force ("the Task Force"). The Task Force, operating in an area surrounding Albany, New York, is one of a number of joint investigative units established throughout the nation to coordinate the efforts of federal, state and local enforcement agencies. State and local officers assigned to the Task Force are deputized as Special Deputy United States Marshals and operate under the direct control and supervision of the United States Drug Enforcement Administration. All of the officers assigned to the Task Force follow DEA policies and procedures. According to the agreement establishing the Task Force ("the agreement"), signed by representatives of the DEA and the local agencies, the use of federal procedures "insures the ability of the Task Force to elect prosecution in either state or federal court, whichever is most appropriate."

On January 29, 1988, the Task Force arranged for an undercover officer to purchase eight ounces of cocaine from appellee Linton Ivery. The Task Force agent, wearing a radio transmitter concealed on his body, met Ivery in a parking lot in the village of Catskill, New York, and finalized the transaction by exchanging $11,000 for the cocaine. He then signalled the other Task Force members to arrest Ivery.

As the back-up units moved in with police lights flashing, a white Pontiac pulled away quickly from the parking lot. Believing that its occupants might be involved with the drug deal, officers gave chase and ordered the Pontiac to stop. As they approached the car, the officers observed in plain view on the back seat a rifle and a shotgun, ammunition, and a bottle of white powder labeled inositol (a substance commonly used for cutting cocaine). The passenger identified himself as James Davis—a known associate of Ivery. At that point, both Davis and the driver, John Furyck, were arrested.

All three were indicted in Greene County Court for violating state narcotics and weapons laws. After Ivery began cooperating with the prosecution, Davis and Furyck moved to suppress the evidence seized from the white Pontiac. On March 2, 1989, after a hearing, County Court Judge John Fromer suppressed the evidence, ruling that the Task Force officers lacked reasonable cause to stop the white Pontiac. Instead of appealing the suppression order, the District Attorney moved to dismiss the charges and Judge Fromer so ordered.

On May 18, 1989, a federal indictment was returned in the Northern District of New York, charging Davis, Furyck and Ivery with conspiracy to possess and distribute cocaine, possession of cocaine with intent to distribute it, distribution of cocaine, and possession of a firearm in relation to a drug trafficking crime.

All the defendants moved to dismiss the indictment and, alternatively, for suppression of the evidence seized from the white Pontiac. Judge McAvoy denied the motion to dismiss, but ordered the evidence suppressed. He ruled that the doctrine of

collateral estoppel prevented the introduction of the evidence in the federal prosecution. It was his view that the federal government should be deemed a party to the state prosecution and, accordingly, had a full and fair opportunity to litigate the admissibility of the evidence during the state proceedings. As a result, Judge McAvoy excluded the evidence without holding a suppression hearing of his own. The government appeals Judge McAvoy's order. 18 U.S.C. § 3731. Appellees defend the order of suppression and ask this Court to dismiss the indictment because it violates fundamental notions of justice, decency and fair play.

### Discussion

■ One of the by-products of our nation's federal system is the doctrine of "dual sovereignty." Under this well-established principle, a federal prosecution does not bar a subsequent state prosecution of the same person for the same acts, and a state prosecution does not bar a federal one. This doctrine rests upon the basic structure of our polity. The states and the national government are distinct political communities, drawing their separate sovereign power from different sources, each from the organic law that established it. Each has the power, inherent in any sovereign, independently to determine what shall be an offense against its authority and to punish such offenses. When a single act violates the laws of two sovereigns, the wrongdoer has committed two distinct offenses. *See generally United States v. Wheeler*, 435 U.S. 313, 316–20, 98 S.Ct. 1079, 1082–84, 55 L.Ed.2d 303 (1978).

In practice, successive prosecutions for the same conduct remain rarities. In the normal exercise of prosecutorial discretion, one sovereign usually defers to the other. For example, as a matter of policy the federal government ordinarily will not pursue criminal charges against a defendant who has already been prosecuted in state court. *See* United States Department of Justice, United States Attorneys' Manual, Tit. 9, § 2.142; *Petite v. United States*, 361 U.S. 529, 531, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960) (per curiam); *United States v.*

*Catino*, 735 F.2d 718, 725 (2d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984). However, this is not a limitation on the government's sovereign right to vindicate its interests and values, and nothing prevents a federal prosecution whenever the state proceeding has not adequately protected the federal interest.

■ The only legally binding exception to the dual sovereignty doctrine is a narrow one carved out by the Supreme Court in *Bartkus v. Illinois*. Successive prosecutions will be barred where one prosecuting sovereign can be said to be acting as a "tool" of the other, 359 U.S. 121, 123, 79 S.Ct. 676, 678, 3 L.Ed.2d 684 (1959), or where one prosecution is merely "a sham and a cover" for another, *id* at 124, 79 S.Ct. 678. Except for this extraordinary type of case, successive state and federal prosecutions may, in fact as well as form, be brought by different sovereigns and the outcome in a state proceeding is not binding upon the later prosecution.

■ For analogous reasons, the suppression of evidence in a state prosecution normally does not prevent the United States from using that evidence in a federal proceeding. Since the United States was not a party to the state action, was not present during the suppression hearing, and had no way of making its views on the issue known to the state judge, it cannot be fairly considered to have had its day in court. Because the two prosecutions are independent, "one sovereign should not be bound by the evidence or the strategy of the other." *United States v. Ramirez*, 404 F.Supp. 273, 275 (W.D.Tex.1974), *quoted in* W.La Fave, 4 *Search and Seizure*, § 11.2(g) at 268 (2d ed. 1987).

■ Accordingly, it has long been the rule in this Circuit that "collateral estoppel never bars the United States from using evidence previously suppressed in a state proceeding in which the United States was not a party." *United States v. Panebianco*, 543 F.2d 447, 456 (2d Cir.1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977); *see also United States v. Mejias*, 552 F.2d 435, 444 (2d Cir.), *cert.*

*denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 115 (1977); *United States v. Beigel,* 370 F.2d 751, 756 (2d Cir.), *cert. denied,* 387 U.S. 930, 87 S.Ct. 2049, 18 L.Ed.2d 989 (1967).

However, although the United States was not a party to the state action, appellees contend that the relationship between the federal and state prosecutors was so close that it placed the federal government in privity with the state prosecution. It would follow, it is argued, that we could fairly treat the United States as if it had been a party to the New York suppression hearing.

■ We recognize that pursuant to the doctrine of collateral estoppel, a non-party to an action can be bound by the determination of issues decided in that action if it "controls or substantially participates in the control of the presentation on behalf of a party." Restatement (Second) of Judgments § 39 (1982); *see also Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 974, 59 L.Ed.2d 210 (1979) (one who assists in the prosecution or defense of an action in aid of some interest of his own is bound). When control is exercised and the opportunity to present proof and arguments on the issues litigated is afforded, one has had his day in court and should be bound by the outcome.

The parameters of this doctrine may well be more circumscribed in the criminal arena, *see Standefer v. United States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (nonmutual collateral estoppel not available in criminal cases), but it does apply. In *Ashe v. Swenson,* the Supreme Court held that collateral estoppel principles can be a bar to further litigation of an issue decided in a criminal defendant's favor. 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). The holding in *Ashe* rested squarely on the Fifth Amendment's guarantee against double jeopardy and does not control the instant case. This is so because of the dual sovereignty doctrine and, in addition, because jeopardy never attached in the local prosecution.

■ Our Circuit, however, has suggested that the due process clause, unaided by the double jeopardy clause, sometimes requires a state to apply collateral estoppel in favor of a criminal defendant. *United States ex rel. DiGiangiemo v. Regan,* 528 F.2d 1262, 1265 (2d Cir.1975), *cert. denied,* 426 U.S. 950, 96 S.Ct. 3172, 49 L.Ed.2d 1187 (1976). The extent to which collateral estoppel is applicable to pretrial orders granting suppression motions seems largely to be an open question. Significantly, *DiGiangiemo* dealt with a subsequent prosecution by the same sovereign. As Judge McAvoy recognized, no court has applied collateral estoppel to bar relitigation of a suppression issue in a later proceeding by a different sovereign. The difference in sovereigns—that is, the difference in parties—will foreclose the use of collateral estoppel against the second prosecution except in the most unusual circumstances. *See* Vestal, *Issue Preclusion and Criminal Prosecutions,* 65 *Iowa L.Rev.* 281, 290 (1980). Appellees contend that this case falls in that area. In essence, they argue that the nature of the joint federal-state Drug Enforcement Task Force was sufficient to create privity between the U.S. and the State of New York.

■ Task Force officers, as we have indicated, were deputized as federal agents and followed federal DEA procedures. According to the agreement establishing the combined operation (signed by representatives of the DEA and the local agencies), federal procedures were used so that the Task Force could "elect prosecution in either state or federal court, whichever [was] most appropriate."

Appellees argue that this language requires the election of one forum and one forum only for prosecution. In short, it is claimed that the DEA and the local police agencies have entered into an agreement barring successive prosecutions. We are asked to hold that because of the composition of the Task Force and the authority given it by this agreement, any prosecution, even one brought in state court, is in reality a federal prosecution and the Task Force should not be allowed a second bite at the apple by filing new charges in feder-

al court. The agreement cannot fairly be read in this manner.

The authority to bring the state charges belonged exclusively to the District Attorney of Greene County; the authority to bring federal charges was vested solely in the United States Attorney for the Northern District of New York. While Task Force officers may choose to report their evidence initially to one prosecutor, that is not the same as initiating a prosecution. Filing charges remains a sovereign decision within the discretionary authority of the District Attorneys with respect to state court and the United States Attorneys with respect to federal court.

We would expect that any delegation of this authority to the Task Force, necessarily ceding to it substantial rights of both sovereigns and abrogating the doctrine of dual sovereignty, would be spelled out with much greater clarity than can be found in this agreement. All that the quoted language makes clear is that Task Force officers should follow federal procedures so that their evidence will be admissible wherever the defendants are tried.[1]

Because the Task Force officers do not file charges or otherwise control prosecutions, their status as federal agents is not determinative of the privity issue. Moreover, it has long been recognized that mere participation by federal agents in an investigation does not implicate the United States as a sovereign. *See, e.g., United States v. Aboumoussallem,* 726 F.2d 906, 910 (2d Cir.1984) and cases cited therein; *United States v. Johnson,* 516 F.2d 209, 211 (8th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 112, 46 L.Ed.2d 85 (1975); *see also Archer v. Commissioner of Correction,* 646 F.2d 44, 48 (2d Cir.) (participation of local officers in an investigation that led to a federal prosecution did not implicate a state as sovereign), *cert. denied,* 454 U.S. 851, 102 S.Ct. 291, 70 L.Ed.2d 141 (1981).

■ For the same reason, this Court has refused to give collateral estoppel effect to a state suppression order where there was substantial federal participation in the initial investigation. *Mejias,* 552 F.2d 435 (cooperative investigation by federal and state authorities); *Panebianco,* 543 F.2d 447 (joint federal-state narcotics unit); *see also United States v. Safari,* 849 F.2d 891, 893 (4th Cir.) (federal government is not a party to state court suppression hearing despite DEA and U.S. Customs Service involvement in investigation), *cert. denied,* 488 U.S. 945, 109 S.Ct. 374, 102 L.Ed.2d 363 (1988).

Clearly, the focus of this inquiry must be on those with the authority to act in their sovereign's name, the prosecutors, and not the law enforcement officers assigned to the Task Force. As Judge McAvoy correctly noted, the pivotal question is whether "there was a close or significant relationship between the federal and New York State prosecutors during the local suppression hearing or whether the federal authorities controlled or actively participated in that hearing such that their interests in enforcing federal law were sufficiently represented."

In determining whether the federal government controlled a state prosecution in varying contexts, some courts have indicated that a defendant must demonstrate that the state proceeding was merely "a sham and a cover for a federal prosecution," meeting the dual sovereignty exception of *Bartkus,* 359 U.S. at 124, 79 S.Ct. at 678. *See United States v. Ng,* 699 F.2d 63, 68 (2d Cir.1983) (state must be tool of federal government); *United States v. Liddy,* 542 F.2d 76, 79 (D.C.Cir.1976) (state officials must have little or no independent volition in state proceedings). Others, however, have required only active participation by the federal government in the first proceeding, a finding that the United States had a "laboring oar" in the state court litigation sufficient to activate principles of estoppel. *See United States v. Parcel of Land at 5 Bell Rock Road,* 896

---

**1.** Even if the agreement could be read as requiring the election of prosecution in one forum only, which it cannot, we do not believe that it would afford defendants any substantive rights. It is not a statute or regulation; nor is it constitutionally mandated. *See United States v. Cati-*

*no,* 735 F.2d 718, 725 (2d Cir.) (discussing Justice Department policy requiring departmental approval for a federal prosecution that follows a state prosecution), *cert. denied,* 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984).

F.2d 605, 610 (1st Cir.1990); *United States v. Nasworthy,* 710 F.Supp. 1353, 1355 (S.D. Fla.1989); *see generally Montana v. United States,* 440 U.S. 147, 153–55, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (applying "laboring oar" analysis in civil context).

■ We need not refine the somewhat ambiguous contours of this test, since appellees' contentions fall far short of showing the kind of close relationship that would meet even the lower hurdle of active participation.

At a minimum, it must be shown that federal prosecutors actively aided the state prosecutors during the local suppression hearing. Only then can it be said that their interests in enforcing federal law were sufficiently represented. The record here is totally barren of evidence of such control or participation. No federal prosecutors were present in Judge Fromer's courtroom during the suppression hearing. Nothing indicates that they provided assistance or advice to the local authorities at any time, or were involved in any way with the local prosecution or the decision not to appeal the suppression order.

Accordingly, in the circumstances of this case, we cannot say that the federal government was in privity with the state prosecution. Appellees have not met their minimum burden, to establish that the United States played a role as a "laboring oar" in the conduct of the state proceedings.

We note that even if the necessary identity of parties existed through privity, collateral estoppel would be inappropriate unless the issue resolved in the first proceeding was the same as the issue sought to be relitigated. *See Dowling v. United States,* — U.S. ——, 110 S.Ct. 668, 673, 107 L.Ed.2d 708 (1990); *Montana,* 440 U.S. at 153, 99 S.Ct. at 973. It is unclear whether the state suppression order was premised on the Fourth Amendment or on state law. In federal court, however, evidence should be suppressed only where federal law has been violated and the federal exclusionary rule applies. The Supreme Court has stressed that

> a federal court must make an independent inquiry, whether or not there has

been such an inquiry by a state court, and irrespective of how any such inquiry may have turned out. The test is one of federal law, neither enlarged by what one state court may have countenanced, nor diminished by what another may have colorably suppressed.

*Elkins v. United States,* 364 U.S. 206, 224, 80 S.Ct. 1437, 1447, 4 L.Ed.2d 1669 (1960). For this reason as well, it would be improper to deny the government an opportunity to present its arguments at a federal suppression hearing.

We have considered all of appellees' additional arguments and have found them to be without merit.

### CONCLUSION

In sum, we are not holding that a federal prosecution can never be precluded from offering evidence that has been suppressed in a state prosecution. We are holding that to justify such an order of suppression the level of federal participation in the state prosecution must be of substantially greater magnitude than displayed here.

The judgment of the district court is reversed and we remand for disposition consistent with this opinion.