[No. B055434. Second Dist., Div. Three. Dec. 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLTON CLIFFORD MEREDITH, Defendant and Appellant.

**COUNSEL**

Richard Rumery, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Acting Assistant Attorney General, William T. Harter and Andrew D. Amerson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**CROSKEY, J.**—Carlton Clifford Meredith appeals from his conviction after a negotiated plea of guilty to one count of possession of cocaine base for sale. (Health & Saf. Code, § 11351.5; count 1.) Meredith pled guilty to one count of a two-count information after the trial court denied his motion under Penal Code section 1538.5 to suppress the evidence against him.[1] He was sentenced to the low term of 3 years in state prison for the offense.

Meredith was initially charged in the United States District Court with possession of cocaine base with intent to distribute (21 U.S.C. § 841 (a)(2)). That charge was dismissed after the district court ruled that the evidence against Meredith had been obtained in violation of Meredith's rights under the Fourth Amendment.

When Meredith was subsequently charged with state offenses in the superior court, he moved under Penal Code section 1538.5 to suppress the evidence against him. He argued first, that the suppression of the evidence and subsequent dismissal of the action in federal court operated to bar introduction of the evidence in state court, and second, that the evidence was obtained in violation of his Fourth Amendment rights. The trial court found the evidence had been legally obtained and denied the suppression motion. Meredith then pled guilty to count 1 of the information.

It is well established that the United States Attorney is not barred from relitigating in federal court the legality of a search or seizure that has been found illegal in a state court, unless federal prosecutors actively participated in the state hearing. (*Elkins* v. *United States* (1960) 364 U.S. 206, 224 [4 L.Ed.2d 1669, 1681, 80 S.Ct. 1437]; *United States* v. *Davis* (2d Cir. 1990) 906 F.2d 829, 832-835.) However, the parties have cited no published California case, and our research has revealed none, which directly addresses the issue of whether the People of the State of California are entitled to relitigate in state court the legality of a search which a federal court has previously found illegal.

We shall conclude that the public prosecutor representing the People of the State of California is not barred from relitigating in state court the legality of a search or seizure that has been found illegal in federal court, unless the People's prosecutors actively participated in the federal proceedings. Such a rule is compelled by general and well-established principles of

---

[1] The information charged Meredith with possession of cocaine base for sale (Health & Saf. Code, § 11351.5) and transportation or sale of a controlled substance (Health & Saf. Code, § 11352; count 2), together with special allegations that he had previously been convicted of selling, transporting, and possessing controlled substances. (Health & Saf. Code, §§ 11370, subds. (a) and (c), 11370.2, subd. (a).)

collateral estoppel, which preclude application of the doctrine unless the party against whom the doctrine is asserted, or one with whom the party is in privity, had a full and fair opportunity to litigate the issue in the earlier proceeding.

On the particular facts of this case, we shall conclude the People were not collaterally estopped from litigating the legality of the search challenged by Meredith. We shall further conclude the court reasonably found upon the basis of substantial evidence that the search did not violate the Fourth Amendment. We shall therefore affirm Meredith's conviction.

## FACTUAL BACKGROUND

As found by the trial court on the basis of substantial evidence (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961]; *People* v. *Carvajal* (1988) 202 Cal.App.3d 487, 495 [249 Cal.Rptr. 368]), Detective Loren Mauerhan of the City of Los Angeles Police Department, an experienced narcotics officer, was on duty in plain clothes at approximately 8:15 p.m. on April 11, 1990, at the Amtrak train station in Los Angeles with several other officers, when he saw Meredith enter the station carrying only one suitcase and barely on time for the 8:30 train bound for Chicago, a train frequently used by narcotics couriers. Meredith went down the length of the hallway to the boarding doors, looking back and to his side all the way and appearing to be in a hurry. Mauerhan now began to suspect Meredith was carrying drugs. He followed Meredith for approximately 200 feet, then approached him, displayed his police badge, and asked Meredith if he would mind answering a few questions.

Meredith agreed to talk with Mauerhan. When he stopped, Mauerhan noticed he was sweating. That circumstance increased Mauerhan's suspicion that Meredith was carrying narcotics. Mauerhan asked Meredith where he was traveling and asked if he could see his ticket. Meredith handed him the ticket and said he was traveling to St. Louis. Mauerhan examined the ticket and returned it; he observed that the ticket had been paid for in cash and that the name on the ticket was Clifford Barnes. Mauerhan asked Meredith if he had any identification. Meredith said he did not, but his name was Clifford Barnes.

Mauerhan now told Meredith he was a narcotics officer and asked if Meredith had any narcotics in his luggage. Meredith replied, "Sure, you can look. I don't have any drugs." Meredith set his suitcase on the ground. It had a lock, a practice which Mauerhan had found to be common among drug carriers. Mauerhan asked Meredith for the key to the lock. Meredith said he had no key, but he gave Mauerhan permission to "bust the lock."

Mauerhan twisted the zipper tab which held the lock to the suitcase and opened the suitcase. Inside he found a plastic shopping sack containing a baggie, which in turn contained what appeared to be rock cocaine.

Meredith's person was later searched in Mauerhan's presence at the police station. A key to the suitcase was found in Meredith's shoe. After being advised of his constitutional rights, Meredith told the police he had gotten the cocaine in Los Angeles, had paid $4,000 for it, and expected to be able to sell it for $9,000 to $10,000 in St. Louis.

Billy Levi and Meredith testified in Meredith's behalf at the suppression hearing in the superior court. Levi drove Meredith to the Amtrak station on April 11, 1990. When Levi left Meredith at the station, Meredith did not appear to be nervous or sweating or upset and did not appear to be walking particularly quickly.

Meredith testified that on April 11, 1990, he was going to St. Louis to visit his family. He arrived 15 minutes early for the 8:30 train, believing that was ample time. He walked toward the train at a normal pace and was not perspiring. As he walked, Detective Mauerhan said, "Excuse me, sir," placed a hand on his shoulder, identified himself as a police officer, and asked if Meredith would answer some questions. Contrary to testimony by Mauerhan, Meredith denied Mauerhan ever told him he was free to go. If he had been told that, Meredith testified, he would have left. Rather than ask questions, Mauerhan directed Meredith to a wall, where he told him to put his hands on the wall and spread his legs. Mauerhan then patted Meredith down, removed Meredith's train ticket from his pocket, and read it. Mauerhan asked if Meredith had any identification, and Meredith said no. Mauerhan asked if he could search Meredith's suitcase. Meredith said he could not. Mauerhan then used a penknife or other small tool to open the locked suitcase, found the cocaine, and arrested Meredith.

Meredith was initially prosecuted in the United States District Court. After a hearing, the district court suppressed the evidence against Meredith, finding that the initial stop of Meredith was unreasonable and that the search of his luggage was conducted without consent.[2] The federal prosecution was then dismissed upon motion of the United States Attorney, and state charges

[2]The district court had the following to say: "I think that if I ever heard of a suppression motion that ought to be granted, it's this one. This was a bad stop. If these officers were following a profile, why, they better improve it because the profile of this man going to catch a train 15 minutes before the train left sure doesn't sound up to what the officers used as reasonable suspicion. [¶] And if you want me to believe that testimony of these officers about free and voluntary consent to search this luggage, why you have got to think that you can sell me the Brooklyn bridge also. I simply just don't believe them. [¶] Where this man—I hate to

were brought in the superior court. After a hearing under Penal Code section 1538.5, the court disbelieved Mauerhan's testimony that he told Meredith he was not under arrest and was free to go. Nevertheless, the court denied the suppression motion, believing the initial stop was reasonable and that Meredith consented to the search of his luggage. Meredith then pled guilty to one count of possession of cocaine base for sale and thereafter filed this timely appeal, challenging the denial of his suppression motion.

CONTENTIONS ON APPEAL

Meredith contends that: (1) the prosecution should have been barred by collateral estoppel from relitigating the reasonableness under the Fourth Amendment of the search of his luggage; (2) the trial court erred by providing Meredith less protection from unreasonable searches and seizures than is provided under federal law; (3) the search of Meredith's luggage was conducted without probable cause and was thus unreasonable.

DISCUSSION

1. *The People of the State of California Were Not Collaterally Estopped From Litigating the Legality of the Search.*

The trial court in this case made findings of fact that the officer's initial stop of Meredith was reasonable and that Meredith consented to the search of his luggage, findings that were dramatically at variance with the United States District Court's findings on the same factual issues. ■■ Meredith contends the federal court's findings on the issues of the reasonableness of the stop and of consent to the search constituted a final determination on the merits of the reasonableness of the search of his luggage. He thus contends that the People were barred by collateral estoppel from relitigating the issues. We cannot agree.

■■ ■■ ▬ ■ Collateral estoppel applies in criminal proceedings independent of double jeopardy principles. (*People* v. *Gephart* (1979) 93 Cal.App.3d 989, 998 [156 Cal.Rptr. 489]. See also *United States* ex rel. *Di*

let a man carrying narcotics go, but where this man had planned against a thing of this nature, and put the key in his shoe and that [*sic*] is supposed to have told these officers, 'Sure, go ahead, bust the lock on the suitcase. It's okay with me.' That's ludicrous. And when officers take the stand and testify to that kind of stuff, it's just plain crap. . . . [W]hen officers come in this court and tell me that this man, knowing that he's got narcotics in the suitcase, and has already hidden the key in his shoe so that he wouldn't get stopped and subjected to being caught, and yet this man being as savvy as he is—he has already been arrested for narcotics transportation—he says, 'Oh sure, go ahead, bust the lock. Okay by me.' It's ludicrous. And you can tell the officers I said so. This motion is granted. . . ."

*Giangiemo* v. *Regan* (2d Cir. 1975) 528 F.2d 1262, 1265-1266.)[3] It bars relitigation of an issue decided at a previous proceeding if (1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; and (2) the previous proceeding resulted in a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the prior proceeding. (*Allen* v. *McCurry* (1980) 449 U.S. 90, 94 [66 L.Ed.2d 308, 313, 101 S.Ct. 411]; *Parklane Hosiery Co.* v. *Shore* (1979) 439 U.S. 322, 326, fn. 5 [58 L.Ed.2d 552, 559, 99 S.Ct. 645]; *People* v. *Taylor* (1974) 12 Cal.3d 686, 691 [117 Cal.Rptr. 70, 527 P.2d 622].) Here, the first condition for the application of collateral estoppel was met: the issues raised by Meredith's suppression motions in state and federal court were identical.

 On the issue of the finality of the prior determination, under California law, collateral estoppel effect is ordinarily accorded only to determinations reached in proceedings in which jeopardy attached. (*People* v. *Methey* (1991) 227 Cal.App.3d 349, 354-355 [277 Cal.Rptr. 777], disapproved on other grounds in *Schlick* v. *Superior Court* (1992) 4 Cal.4th 310 [14 Cal.Rptr.2d 406, 841 P.2d 926].) In particular, a pretrial suppression ruling is not ordinarily considered "final" so as to preclude relitigation in another proceeding. (*People* v. *Gephart, supra,* 93 Cal.App.3d at pp. 999-1000.) Relitigation of suppression issues is not precluded where charges have been refiled following the grant of a motion to dismiss under Penal Code section 995 (*People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 95 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Methey, supra,* 227 Cal.App.3d at p. 355), or after grant of a motion under Penal Code section 1538.5 in the municipal court (*People* v. *Methey, supra,* 227 Cal.App.3d at p. 355; *People* v. *Sahagun,* (1979) 89 Cal.App.3d 1, 16-17 [152 Cal.Rptr. 233]) or in the superior court in a different county on different charges (*People* v.

---

[3]Collateral estoppel as an element of the constitutional protection against double jeopardy (*Ashe* v. *Swensen* (1970) 397 U.S. 436, 443-445 [25 L.Ed.2d 469, 475-576, 90 S.Ct. 1189]; *In re Crow* (1971) 4 Cal.3d 613, 623 [94 Cal.Rptr. 254, 483 P.2d 1206]) does not, of course, apply in this case, as jeopardy never attached. (*United States* v. *Martin Linen Supply* (1977) 430 U.S. 564, 569 [51 L.Ed.2d 642, 649-650, 97 S.Ct. 1349]; *People* v. *Bas* (1987) 194 Cal.App.3d 878, 883, fn. 1 [241 Cal.Rptr. 299]; *Jackson* v. *Superior Court* (1937) 10 Cal.2d 350, 356 [74 P.2d 243, 113 A.L.R. 1422]; *People* v. *Gephart, supra,* 93 Cal.App.3d at p. 998.) Even if jeopardy had attached, successive prosecutions for the same conduct by separate sovereigns do not violate the constitutional prohibition. (*Bartkus* v. *Illinois* (1959) 359 U.S. 121, 131-132 [3 L.Ed.2d 684, 691-692, 79 S.Ct. 676]; *People* v. *Commingare* (1977) 20 Cal.3d 142, 145 [141 Cal.Rptr. 542, 570 P.2d 723].)

Had Meredith been acquitted in the federal proceeding, California's "prior acquittal rule" would prohibit a second prosecution in the California courts. (Pen. Code, §§ 656, 687, 793, 794, 1016, subd. (4).) However, the federal prosecution ended in a dismissal, not a final judgment on the merits.

*Gephart, supra,* 93 Cal.App.3d at p. 1000. See generally, 1 Witkin & Epstein, Cal. Criminal Law (1988) Defenses, § 350, p. 405).[4]

██ Meredith correctly points out that a federal court's ruling on a suppression motion is an appealable order (18 U.S.C. § 3731). He contends that for this reason, the order constituted a "final" determination to which preclusive effect must be accorded. This case is not resolved, however, by the circumstance that a federal suppression ruling is, by federal statute, appealable. This is so for two reasons. First, it appears to be an open question in the federal courts whether a ruling on a pretrial suppression motion constitutes a "final judgment on the merits," so as to preclude relitigation of the suppression issues in another proceeding. The circumstance that such an order is appealable is only one factor in determining whether it is "final" for collateral estoppel purposes. (See, e.g. *U.S.* v. *Davis, supra,* 906 F.2d at p. 833; *United States* ex rel. *Di Giangiemo* v. *Regan, supra,* 528 F.2d at p. 1265.)[5] Second, and more importantly, even if the federal suppression ruling were "final," relitigation of the issue under the facts of this case would not be precluded, for the third requirement for the application of collateral estoppel was not met.

██ An essential requirement for collateral estoppel to apply is the requirement that the party sought to be bound by a prior determination must

---

[4]The result in this case is not affected by the Supreme Court's recent decision in *Schlick* v. *Superior Court, supra,* 4 Cal.4th 310. The Courts of Appeal had previously reached conflicting results on the narrow statutory question of whether subdivision (d) of Penal Code section 1538.5 prohibits the readjudication of suppression issues if a motion brought under section 1538.5 is granted in the superior court and, rather than appeal the ruling, the prosecution dismisses the action and refiles the charge. In *Schlick,* the court held that under such circumstances the People would remain bound by the court's prior ruling on the suppression motion. However, we note that this ruling is expressly limited to "the dismissal and refiling of substantially identical charges in the same county." (4 Cal.4th at p. 316.) The court did not reach or discuss the question of whether different considerations might not compel a different result in cases involving (1) multi-county prosecutions, or (2) where different charges are brought, or (3) where subsequent investigation has produced new evidence not reasonably discoverable at the time of the prior suppression motion.

Here, of course, the suppression motion for which a collateral estoppel effect is claimed was not a motion under Penal Code section 1538.5, but a suppression motion in the United States District Court. Thus, the result here depends not upon the construction of section 1538.5, subdivision (d), but upon general principles of collateral estoppel.

[5]For purposes of issue preclusion, " 'final judgment' includes any prior adjudication of an issue in another action between the parties or persons in privity with them that is determined to be sufficiently firm to be accord conclusive effect," (*United States* ex rel. *DiGiangiemo* v. *Regan, supra,* 28 F.2d at p. 1265). Factors supporting a conclusion that a decision is final for this purpose are "that the parties were fully heard, that the court supported its decision with a reasoned opinion, [and] that the decision was subject to appeal or was in fact reviewed on appeal." (*Ibid.,* quoting from Rest.2d Judgments (Tent. Draft No. 1, 1973) § 41. See generally 4 La Fave, Search and Seizure (2d ed. 1987) Administration of the Exclusionary Rule, § 11.2, The Motion to Suppress., p. 213.)

have been a party to the prior proceeding or in privity with a party. (*Allen* v. *McCurry, supra,* 449 U.S. at p. 95 [66 L.Ed.2d at pp. 313-314].) ■ It is a violation of due process for a determination to be binding on a litigant who was not a party, or in privity with a party, to the proceeding in which the determination was made, and who thus never had an opportunity to be heard. (*Parklane Hosiery Co.* v. *Shore, supra,* 439 U.S. at p. 327, fn. 7 [58 L.Ed.2d at p. 559].) ■ Here, the People of the State of California were not a party to the federal proceeding and were not in privity with the United States, the party against whom the federal ruling was made. The effect of Meredith's claim of collateral estoppel would be to deprive the People of the opportunity of fully and fairly litigating suppression issues that were determined against the United States Attorney in federal court.

It bears emphasis that the determinative factor in this case is that the People of the State of California were neither involved in the federal proceedings nor in privity with the United States, which prosecuted Meredith in those proceedings. Meredith argues that federal courts are statutorily required to give collateral estoppel effect to prior state court determinations wherever such effect would be given by the courts of the state where a particular determination was made (28 U.S.C. § 1738; *Allen* v. *McCurry, supra,* 449 U.S. at p. 96 [66 L.Ed.2d at pp. 314-315]), and therefore a reciprocal requirement should be imposed upon state courts. The question before us, however, is not whether the California *court* below was required to accord what in effect would amount to full faith and credit to the suppression ruling of the federal *court,* but whether *the People of the State of California,* represented by the district attorney, could be precluded from relitigating the admissibility under the Fourth Amendment of evidence, where that issue had previously been determined against *the United States,* represented by the United States Attorney, in a proceeding in which the People of the State of California were not a party. Under well-established principles of collateral estoppel, the answer to that question is no.

Where the situation is reversed, and the United States Attorney seeks to relitigate in federal court suppression issues that have been decided against the state's prosecutor in state court, the determination in the state prosecution normally does not prevent the United States Attorney from relitigating the suppression issues. Rather, the federal court makes an independent inquiry into the issues, whether or not there has been such an inquiry by the state court, and regardless of the outcome of the inquiry. (*Elkins* v. *United States, supra,* 364 U.S. at p. 224 [4 L.Ed.2d at p. 1681]; *Rios* v . *United States* (1960) 364 U.S. 253, 255 [4 L.Ed.2d at p. 1688, 1690, 80 S.Ct. 1431]; *U.S.* v. *Davis, supra,* 906 F.2d at p. 832; *U.S.* v. *McConnell* (8th Cir. 1990) 903 F.2d 566, 570, cert. den. __ U.S. __ [113 L.Ed.2d 449, 111 S.Ct. 1393]; *U.S.* v. *Garrett* (9th Cir. 1977) 565 F.2d 1065, 1068-1069, cert. den. 435 U.S.

974 [56 L.Ed.2d 67, 98 S.Ct. 1620].)[6] The one exception to the above rule occurs if federal prosecutors actively participated in the state court proceedings—had a "laboring oar" in the state litigation—and thus had a fair and full opportunity to litigate the suppression issues. (*U.S.* v. *Davis, supra*, 906 F.2d at pp. 834-835.)

Common sense and fundamental principles of due process require that a similar rule must apply where suppression issues are first litigated by the United States Attorney in federal court and the People of California, represented by the district attorney, later seek to litigate the same issues in state court. The People are bound by the prior determination only if state prosecutors actively participated in the prior litigation.

Nothing in the record of this case suggests the proceedings against Meredith were a joint effort by state and federal prosecutors. We thus conclude the People were not bound by the determination in the earlier proceeding.

Meredith argues, however, that privity existed between the United States and the People of California, because the Los Angeles Police Department "represented the rights of the government, both state and federal" in both proceedings.[7] This argument fails to appreciate that it was the United States Attorney and the District Attorney of Los Angeles County, not the police, state or federal, who had the authority to prosecute Meredith in behalf of their respective sovereigns, to determine how assiduously to press the prosecution, and to decide on the strategy to be used in the prosecution. (Gov. Code, § 26501; *People* v. *Gephart, supra*, 93 Cal.App.3d at p. 999; *Rosato* v. *Superior Court* (1975) 51 Cal.App.3d 190, 226 [124 Cal.Rptr. 427]; *U.S.* v. *Davis, supra*, 906 F.2d at p. 834.)

■ The United States and the several states have legitimate and parallel interests in prosecuting persons for crime. But they are *separate sovereigns* under our federal system, and their interests are not necessarily identical. (*Rinaldi* v. *United States* (1977) 434 U.S. 22, 28 [54 L.Ed.2d 207, 313, 98 S.Ct. 81].) ■ Thus, the district attorney—the People's lawyer in this case—may have had compelling reasons for pursuing the prosecution which

---

[6]See also *U.S.* v. *Mastrangelo* (11th Cir. 1984) 733 F.2d 793, 798; *U.S.* v. *Singer* (8th Cir. 1982) 687 F.2d 1135, 1144, fn. 16; *U.S.* v. *Fossler* (5th Cir. 1979) 597 F.2d 478, 481.)

[7]It also appears there may have been some level of cooperation between state and federal law enforcement agencies in the events leading to Meredith's arrest and prosecution. Shortly after Meredith's arrest by Los Angeles police officers, an agent of the United States Drug Enforcement Administration conducted a field test of the substance found in Meredith's luggage and concluded it was rock cocaine. However, cooperation between state and federal police agencies does not, without more, establish there was cooperation between the separate sovereigns' prosecutorial authorities. (*U.S.* v. *Davis, supra*, 906 F.2d at p. 834, and cases cited therein.)

may not have affected the United States Attorney, and which could not be overcome by the United States Attorney's failure to obtain a favorable ruling. (Cf. *People* v. *Gephart, supra,* 93 Cal.App.3d at pp. 999-1000.) Where the district attorney did not participate in the initial federal proceedings against Meredith, the People of the State of California had no opportunity to be heard in the federal proceedings, and thus under general principles of collateral estoppel, were not bound by the determinations made in those proceedings. In particular, the People were entitled to litigate the reasonableness of the challenged search in the superior court despite the federal court's previous ruling against the United States on the issue.

2. *The Superior Court Was Not Precluded From Determining the Reasonableness of the Challenged Search Differently From the Way the Federal Court Determined the Issue.*

■ Meredith contends that because a state may not provide less protection against unreasonable searches and seizures than is provided under federal law (*In re Lance W.* (1985) 37 Cal.3d 873, 890 [210 Cal.Rptr. 631, 694 P.2d 744]), the state court in this case was precluded from admitting against Meredith evidence that had been excluded by the federal court. The argument is clever, but specious. The state court in this case did not apply less stringent standards of reasonableness to the police officer's conduct than were applied by the federal court. The state court merely *believed* Detective Mauerhan's testimony that he complied with well-recognized constitutional standards, whereas the federal court did not. This was a *finding of fact,* which the state court was entitled to make.

We have concluded that the People were not barred from relitigating in state court the issue of the reasonableness of the challenged search. It must therefore follow that the state court was not precluded from determining the relevant issues of fact differently from the federal court, and thus deciding the issue differently. The state court, like the federal court, impliedly recognized that there was no probable cause to search Meredith's luggage, and that the validity of the search depended upon whether Meredith validly consented to it. (*Schneckloth* v. *Bustamonte* (1973) 412 U.S. 218, 219 [36 L.Ed.2d 854, 858, 93 S.Ct. 2041]; *Bumper* v. *North Carolina* (1968) 391 U.S. 543, 548 [20 L.Ed.2d 797, 802, 88 S.Ct. 1788].) The state court committed no error by believing he did, although the federal court believed he did not.

3. *Substantial Evidence Supports the Trial Court's Ruling.*

■ Inasmuch as the search of Meredith's luggage was conducted without a warrant, the prosecution had the burden of establishing an exception to the warrant requirement. The prosecution relied upon consent, which

constitutes such an exception. (*Schneckloth* v. *Bustamonte, supra,* 412 U.S. at p. 219 [36 L.Ed.2d at p. 858]; *People* v. *James* (1977) 19 Cal.3d 99, 106 [137 Cal.Rptr. 447, 561 P.2d 1135].) Thus, the first issue to be determined by the trial court was whether the police officers' initial stop of Meredith was reasonable within the meaning of the Fourth Amendment, for if it was not, the Fourth Amendment violation might infect any purported consent to the subsequent search. (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 557 [64 L.Ed.2d 497, 511, 100 S.Ct. 1870]; *Wong Sun* v. *United States* (1963) 371 U.S. 471, 487 [9 L.Ed.2d 442, 455, 83 S.Ct. 407].) Secondly, the court was required to determine whether Meredith did or did not consent to the search. The court found the initial stop reasonable[8] and found Meredith consented to the search.

The trial court's findings of fact relating to a challenged search are reviewed under the substantial evidence standard and must be upheld if supported by substantial evidence. (*People* v. *Leyba, supra,* 29 Cal.3d at pp. 596-597.) However, an appellate court will not uphold a ruling based upon evidence that is inherently improbable. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 306 [228 Cal.Rptr. 228, 721 P.2d 110].)

The federal court apparently found Detective Mauerhan's testimony inherently improbable, and we agree the testimony contains matters quite contrary to the way one would expect a person carrying contraband to behave. However, testimony which discloses unusual circumstances is not for that reason alone inherently improbable. (*People* v. *Barnes, supra,* 42 Cal.3d at p. 306.) Likewise, the circumstance that there is testimony that a person suspected of crime did some particular act directly contrary to his or her interests does not necessarily compel the conclusion the suspect did not, in fact, do such act. (*People* v. *James, supra,* 19 Cal.3d at pp. 113-114.)

---

[8]The court's actual words were that the court believed Mauerhan "had probable cause to detain the defendant . . . ." We cannot but believe the court was speaking somewhat loosely, for we are inclined to agree with the federal court that nothing Mauerhan described about Meredith's conduct before the stop constituted probable cause, or even sufficiently reasonable suspicion to justify as much as a *"Terry"* stop. However, the People did not argue there was probable cause or reasonable suspicion for a seizure within the meaning of the Fourth Amendment. Rather, the People's theory was that the initial encounter was consensual and the ultimate search was also pursuant to consent. Mauerhan testified as follows: "That's the way I've been trained in drug courier cases. They are done on consensual encounters. They're not a detention. And the most important thing to do and the first thing I did do on every case is tell the person that I'm a police officer, that they're not in trouble, that they're not under arrest, and that they're free to leave and would they mind talking to me." Although the court did not believe Mauerhan expressly told Meredith he was free to leave, the absence of such express statement did not necessarily make the encounter a "seizure." (*Mendenhall* v. *United States, supra,* 446 U.S. at p. 555 [64 L.Ed.2d at pp. 509-510].) Based upon the totality of the circumstances of the initial encounter as described by Mauerhan, we believe the court could reasonably find the encounter consensual, and thus reasonable under the Fourth Amendment.

While it may be unusual for a rational narcotics courier to consent to a police search of the place where his cargo is stowed, any number of rational, if not particularly wise, reasons might have motivated Meredith to consent to the search of his luggage, despite his knowledge that incriminating evidence was inside. He might have wished to appear cooperative to throw Officer Mauerhan off the scent or lull him into conducting a superficial search, or he might have believed the evidence was well enough hidden to escape detection, or he might have believed he could successfully explain its presence or deny knowledge that it was there. (Cf. *People* v. *James, supra,* 19 Cal.3d at p. 114.)

In short, the issue of Meredith's consent is one on which rational minds could disagree, and the circumstance that a federal court did disagree with the court below on the issue is not a reason for us to scrutinize our state court's findings more strictly than we would otherwise. "[T]here is 'no intrinsic reason why the fact that a man is a federal judge should make him more competent, or conscientious, or learned with respect to the [consideration of Fourth Amendment claims] than his neighbor in the state courthouse.' [Citation.]" (*Stone* v. *Powell* (1976) 428 U.S. 465, 494, fn. 35 [49 L.Ed.2d 1067, 1087, 96 S.Ct. 3037].)

Both the federal and the state court had the opportunity of observing the witnesses as they testified and of assessing their credibility. We do not have that opportunity. This being the case, important rules governing appellate review compel us to defer to the assessment made by the trial court whose decision is before us for review. Where the state court found that Meredith, in fact, initially consented to talk with the police and then consented to the search, we cannot find that the imprudence of such consent rendered the officer's testimony so inherently improbable that we may ignore the appellate rules which govern us and reject the trial court's finding.

The trial court having found on the basis of substantial evidence that Meredith consented to the encounter with the police and the search of his luggage, the court properly denied his motion to suppress the evidence so discovered. (*United States* v. *Mendenhall, supra,* 446 U.S. at pp. 559-560 [36 L.Ed.2d at p. 875]; *Schneckloth* v. *Bustamonte, supra,* 412 U.S. at p. 248 [64 L.Ed.2d at pp. 512-513]; *People* v. *James, supra,* 19 Cal.3d at pp. 117-118.)

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Hinz, J., concurred.

Appellant's petition for review by the Supreme Court was denied April 1, 1993. Mosk, J., was of the opinion that the petition should be granted.