UNITED STATES of America, Plaintiff,

v.

$70,000 UNITED STATES CURRENCY and One 1989 Chevrolet S–10 Blazer Truck, VIN 1GNCT18Z4KO182857, Defendants-in-rem.

No. 91 Civ. 6369(MEL).

United States District Court, S.D. New York.

July 12, 1993.

Mary Jo White, U.S. Atty., New York City, Bart G. Van De Weghe, Asst. U.S. Atty., of counsel, for plaintiff.

Scott H. Greenfield, New York City, for claimants.

LASKER, District Judge.

In this action, the government seeks forfeiture of a Chevrolet S–10 Blazer and $70,000 in United States currency allegedly used in connection with the possession of marijuana intended for distribution. The claimants William Henry (as to the defendant-in-rem vehicle) and Jupiter Wine Corporation, by its president, Henry (as to the defendant-in-rem currency) have moved to dismiss the action on the basis of collateral estoppel, and the government has cross-moved for summary judgment on its forfeiture claims.

The claimants' collateral estoppel argument is without merit, and accordingly their motion to dismiss is denied. As to the government's motion for summary judgment, genuine questions of material fact remain as to whether a nexus exists between the currency and alleged narcotics activity, and, accordingly, the government's motion for summary judgment is denied as to the currency. However, the government's motion is granted as to the vehicle.

I.

In May 1989, the United States Attorney's Office for the Southern District of New York began an investigation of alleged heroin trafficking by Angel Martinez and other defendants. A DEA Task Force, headed by special agent James Kerrigan, was assigned to the case. In late November 1989, the investigation was converted to a "joint investigation" in which state and local authorities participated with federal authorities.

In late December 1990, the Task Force learned that Martinez had found a new source of supply and intercepted what they interpreted to be "coded narcotics related" conversations between Henry and Angel Martinez, which indicated that Henry might be supplying heroin to Martinez. Henry is the owner of a liquor store and the conversations took the form of discussions about the sale of wine. Henry was heard making plans to meet Martinez, seen meeting him and, on at least two occasions, seen exchanging packages with him—packages which the agents believed contained drugs and money.

On February 1, 1991, after observing Henry loading a large cardboard box into the back of his vehicle—having intercepted a conversation the day before in which Henry promised to deliver to Martinez "ten things packed up" on February 1, 1991—, DEA agents stopped Henry on the Henry Hudson Parkway with guns, including machine guns, drawn and conducted a search of his Chevrolet S–10 Blazer (the defendant-in-rem vehicle). Henry was forcibly removed from the car, handcuffed, and ordered to lie face down on the ground while the agents conducted the search of the car. Approximately ten (10) pounds of marijuana, packaged in 10 separate plastic bags, were discovered inside a cardboard box in the rear of the trunk, and $70,000 in cash in small denominations (the defendant-in-rem currency) was found in a leather bag on the front seat. The agents also found a piece of paper in Henry's wallet containing Angel Martinez's beeper number and Martinez's brother's telephone number. The agents seized the currency and the marijuana, but did not arrest Henry or tell him that he was the subject of a drug investigation. Instead, assertedly to protect their ongoing investigation, the DEA agents told Henry that they had stopped him in the mistaken belief that he resembled a bank robber then at large.

On April 12, 1991, Henry was arrested and charged with possession of marijuana. On June 13, 1991, he was indicted in New York Supreme Court, Bronx County.

On November 20, 1991, the Honorable Phylis Skloot Bamberger granted in part, and denied in part, Henry's motion to suppress the evidence seized in the February 1, 1991, stop and search. The court found valid the, seizure of the marijuana on the grounds that the agents had probable cause to search for drugs, but ruled that the search and seizure of the currency, as well as the seizure of the information taken from Henry's wallet, was unconstitutional, because the agents had no reason to believe that the currency or the contents of Henry's wallet were drug related.

Henry subsequently pled guilty to possession of marijuana and was sentenced to five (5) years probation. He appealed the denial of his motion to suppress the marijuana, and, on December 29, 1992, the Appellate Division, First Department, unanimously reversed Judge Bamberger's ruling as to the marijuana, suppressing *all* evidence seized as a result of the stop and search on February 1, 1991, including the marijuana, on the ground that the "manner" in which the search was conducted was unconstitutional. *People v. Henry*, 185 A.D.2d 1, 591 N.Y.S.2d 1018. In its December 1992 decision, the Appellate Division stated:

> we are not so much concerned with the justification for the search ... as with the manner in which the stop and seizure took place.
>
> . . . .
>
> The overly intrusive nature of this law enforcement action requires us to suppress all the evidence so acquired.

On or about July 16, 1991, the United States commenced administrative forfeiture proceedings against Henry for the currency and the vehicle. The government initiated the instant judicial forfeiture proceedings before this Court on September 20, 1991. Following the December 1992 Appellate Division ruling suppressing all of the evidence seized in the February 1, 1991 search, the claimants moved to dismiss this forfeiture action on the ground that the Appellate Division decision collaterally estopped the government from presenting evidence from the February 1, 1991 seizure in this proceeding. The government has cross-moved for summary judgment on its forfeiture claims.

## II.

■ Henry contends that the Appellate Division's ruling on the suppression issue is binding on the United States under principles of collateral estoppel.

■ Under some circumstances, a state court suppression ruling may have collateral estoppel effect in a federal proceeding, but those circumstances are quite narrow. Even assuming that the issue as to which preclusion is sought is identical to the issue decided in the prior proceeding, it must be proven that the party against whom the claim of collateral estoppel is asserted was a party to, or "in privity" with a party to, the proceedings in which the earlier ruling was made.

In the instant case, there is no question that the issue as to which preclusion is sought is identical to the issue decided in the prior proceeding, that the issue was necessarily decided in the prior proceeding, and that the state prosecutors had a full and fair opportunity to litigate the issue in the prior proceeding. The sole question is whether, in the state proceedings, the state prosecutors and the federal government were "in privity."

It is not disputed that the Martinez investigation, which ultimately led to Henry's indictment, began in May 1989 under the exclusive direction of the United States Attorney's Office of the Southern District of New York. However, it appears that in late November 1989, that office relinquished control of the case and had no involvement in any of the ensuing state criminal prosecutions relating to the Martinez investigation, including the William Henry prosecution. James Kerrigan, a DEA special agent assigned to the Martinez investigation, has stated by affidavit that during a meeting he had in November 1989 with the chief of the Narcotics Unit at the United States Attorney's Office for the Southern District of New York,

it was decided that the Task Force would work with the Office of Special Narcotics

Prosecutor for the City of New York in connection with the Martinez investigation. Following this meeting, the United States Attorney's Office had no further involvement in the Martinez criminal investigation.

The government contends that the United States Attorney's involvement in the case ended at this time and control was transferred to the Special Narcotics Prosecutor's Office for the City of New York. Assistant District Attorney James Ortiz, who prosecuted the Martinez case in state court, has stated by affidavit:

> Based upon my own personal knowledge and the files of the Office of the Special Narcotics Prosecutor, there was no involvement by the United States Attorney's Office for the Southern District of New York, or any other federal prosecutor's office, in the New York state criminal prosecutions relating to the Martinez investigation, including as to claimant William Henry, after November of 1989.

In fact, although the claimants loosely contend that federal prosecutors "controlled" the state prosecution, they do not argue that federal prosecutors participated, physically or otherwise, in the suppression hearing before Judge Bamberger or the appeal before the Appellate Division. The claimants' contention is, rather, that federal agents controlled the investigation which led to Henry's indictment, and that the United States Attorney's Office of the Southern District of New York made the decision that the state should prosecute Henry on the criminal possession count. They assert that

> By way of the allegations, observations and testimony of agents of the United States government, who comprised the witnesses against the claimant, and likely by affirmative involvement as well, the government authorized, controlled and dictated the claimant's state court prosecution

and argue that "The government is bound, through its choice of forum, its clear privity of interest as well as its virtual if not direct representation, to the outcome of its choice."

However, in a case strikingly similar to the one at hand, the Court of Appeals of this Circuit recently held, in a case growing out of a joint drug investigation, that in order for the government to be collaterally estopped by state court rulings—

> At a minimum, it must be shown that federal prosecutors actively aided the state prosecutors during the local suppression hearing.

*United States v. Davis,* 906 F.2d 829, 835 (2d Cir.1990). The court specifically noted that "mere participation by federal agents in an investigation does not implicate the United States as a sovereign." *Id.* at 834 (citations omitted). No aiding, actively or otherwise, in the local suppression hearing has been asserted, much less proven, in this case.

The claimants contend that the current case is distinguishable from *Davis* because *Davis* involved a federal criminal prosecution and this action is one for civil forfeiture. However, no reason is suggested and we know none which would justify the use of a different standard to determine the issue of collateral estoppel in a civil case as distinct from a criminal prosecution. In either situation, the central question—where the issue decided in the earlier proceeding is conceded to be identical with the later—is whether the party sought to be estopped genuinely participated in the earlier proceeding.

The claimants rely on *Montana v. United States,* 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), a civil case in which the Supreme Court held that where the United States had "a 'laboring oar' in the conduct of state-court litigation," principles of estoppel are "actuated." *Id.* at 155, 99 S.Ct. at 974. Their contention is that *Montana* not *Davis* should apply in the civil forfeiture context. However, the dichotomy posited by claimants does not exist—the precise standard the *Davis* court applied in reaching its holding was the *Montana* "laboring oar" rule. After discussing different criteria for determining whether the federal government controlled a state prosecution, the court stated that it need not decide which standard to apply because "even the lower hurdle of active participation"—referring to the *Montana* "laboring oar" standard—was not met. *United States*

*v. Davis,* 906 F.2d 829, 834–35 (2d Cir.1990). It then set out the rule quoted above.

Applying the rule of *Montana* as particularized by *Davis,* I find that the facts of record do not support a ruling that the United States is collaterally estopped or bound by the state court decisions. Since claimants' motion is predicated on the proposition that the state court decisions collaterally estop the United States, the claimants' motion to dismiss is denied.

### III.

The government moves for summary judgment granting forfeiture of the seized vehicle pursuant to 21 U.S.C. § 881(a)(4), and of the seized currency pursuant to 21 U.S.C. § 881(a)(6). The motion is granted as to the vehicle but denied as to the currency.

Under the statutory scheme established by 21 U.S.C. § 881, the government must first demonstrate probable cause connecting the property with drug trafficking. *See, e.g., United States v. All Right, Title & Interest,* 983 F.2d 396, 403 (2d Cir.1993). When the forfeiture sought is of a vehicle, proof that there is probable cause to believe that the vehicle was used "to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of," 21 U.S.C. § 881(a)(4), a controlled substance suffices. When the forfeiture is of currency, the government must establish that the currency consists of proceeds traceable to moneys "furnished or intended to be furnished by any person in exchange for a controlled substance," 21 U.S.C. § 881(a)(6).

■■■ Once the government has demonstrated probable cause, the burden of proof shifts to claimant to establish that "the factual predicates necessary to show probable cause have not been met or to show claimant's lack of knowledge or consent to the drug-related activities." *All Right, Title & Interest,* 983 F.2d at 403. In the case of currency, the claimant bears the burden of

proving that the currency does not constitute moneys traceable to drug transactions.

### A.

■■ In this Circuit, proof that a vehicle was used to transport even a small quantity of drugs is sufficient to establish that the vehicle is subject to forfeiture. In *United States v. One 1986 Mercedes Benz,* 846 F.2d 2, 5 (2d Cir.1988), an appeal from a bench trial, the court affirmed the district court's determination that a vehicle was forfeitable pursuant to 21 U.S.C. § 881(a)(4) based on evidence that the Mercedes was used to transport a small quantity of marijuana.

Accordingly, if evidence that the marijuana was discovered in the defendant-in-rem vehicle is admissible, the government is entitled to forfeiture. The admissibility of that evidence in turn depends on whether the search and seizure of the marijuana was constitutional, which in turn depends on whether there was probable cause for such actions.[1]

■■ Probable cause for a search exists upon a showing "first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the [place to be searched]." *United States v. Travisano,* 724 F.2d 341, 345 (2d Cir.1983). Under the governing "totality-of-the-circumstances analysis," probable cause is a "practical, common-sense decision" that a "fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *United States v. Ponce,* 947 F.2d 646, 650 (2d Cir.1991). Based on the intercepted telephone conversations between Henry and Angel Martinez—suggestive of drug related transactions, Henry's meetings with Martinez during which packages were sometimes exchanged, the January 31, 1991 conversation in which Henry promised to deliver "ten things packed up" to Martinez the next day, and the DEA's surveillance of Henry loading a cardboard box into his trunk on February 1, 1991, the agents had probable cause to

---

1. The Supreme Court has held that the exclusionary rule applies in civil forfeiture proceedings. *Plymouth Sedan v. Pennsylvania,* 380 U.S. 693, 701, 85 S.Ct. 1246, 1251, 14 L.Ed.2d 170 (1965).

believe that Henry intended to sell drugs to Angel Martinez and that drugs would be found in the Blazer. Once the agents found narcotics it was lawful for them to seize it.

■ The claimants also contend that the search was unconstitutional because a search warrant was not obtained. They argue that under federal law the automobile exception applies only to searches incident to arrests. However, that position is belied by the case law. The Supreme Court has held that "where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained," a search warrant is not necessary. *Chambers v. Maroney,* 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). In this case, there was probable cause, the car was movable and it was clear that the car's contents might not be found again if an immediate search was not made. Accordingly, the automobile exception to the warrant requirement was met.

■ Nevertheless, claimants argue, as Henry did before the Appellate Division, that the evidence taken from the search should be suppressed because of the manner in which the search was conducted. The circumstances of the arrest are indeed disquieting. As indicated above, the DEA agents stopped Henry on the Henry Hudson Parkway with guns, including machine guns, drawn, removed him from his vehicle, and ordered him to lie face down on the ground. Following their search of the vehicle, the agents seized the currency and the marijuana discovered in the Blazer but told Henry they were investigating a bank robbery in the vicinity and released him. Nevertheless, the conduct of the DEA agents, troubling though it is, does not amount to a constitutional violation under relevant federal precedents. *See Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989) (test is one of objective reasonableness). The agents did not hurt Henry in any way. The claimants emphasize the agents' brandishing of weapons and use of a "ruse" to explain their stop of the vehicle. However, as to the drawing

of weapons, the Court of Appeals of this Circuit has noted, in a case involving the analogous issue of whether the amount of force used in conducting an investigatory stop converted the stop into an arrest, that

Where a suspect is thought to be armed, or even when he is thought to be involved in criminal activity in which the use of weapons is a commonplace, police may protect themselves by displaying their weapons.

*United States v. Lechuga,* 925 F.2d 1035, 1039–40 (7th Cir.1991). Neither does the agents' "bank robbery" story render the search unconstitutional. The agents' conduct was reasonable in the circumstances considering their objective of continuing to track Henry to procure further evidence of the alleged heroin trafficking.

Accordingly, I conclude that, the February 1, 1991 search and seizure was constitutional and that the presence of the marijuana in the claimant's car is thus admissible evidence. Since that evidence establishes that the vehicle was used to transport a controlled substance, the vehicle is subject to forfeiture.[2] It follows that the government's motion for summary judgment as to the vehicle is granted.

## IV.

The government contends that the currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) either as money intended to be furnished in exchange for controlled substances or as proceeds traceable to such exchanges. However, genuine questions of material fact remain as to whether the currency at issue consists of moneys traceable to drug transactions.

■ There is a threshold question of whether evidence that the currency was found in "proximity" to the marijuana and was in cash in small denominations is admissible. Judge Bamberger held that evidence surrounding the seizure of the currency was not admissible in the state criminal proceeding because the DEA agents did not have probable cause for searching for the currency. I do not find her reasoning persuasive

---

2. No defense of innocent ownership has been    assert with respect to the vehicle.

but put this issue, which has not been briefed on this motion, to the side because it does not affect the outcome of this motion. Even assuming the evidence of the currency seizure were admissible, the mere fact that the currency was found in "proximity" to drugs and that the currency was in cash in small denominations is not sufficient to meet the government's burden of establishing "probable cause" for forfeiture.

In sum, while the evidence produced in the investigation before February 1, 1991, was sufficient to give the agents probable cause to make the search and seizure of February 1, 1991, neither that evidence nor the fact that the currency was found in the car are sufficient, when inferences are drawn favorably to the claimant, as they must be on this motion, to justify the grant of summary judgment of forfeiture as to the currency.

### Conclusion

In sum, the claimants' motion to dismiss and the government's motion for summary judgment as to the currency are denied. However, the government's motion for summary judgment as to the vehicle is granted.

It is so ordered.