**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 99-4443

CHRISTOPHER EBERO NWAIGWE, a/k/a
Christopher Maige,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-98-414-WMN)

Argued: June 8, 2000

Decided: August 4, 2000

Before MURNAGHAN, WILLIAMS, and MICHAEL,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Denise Charlotte Barrett, Assistant Federal Public
Defender, Baltimore, Maryland, for Appellant. Joyce Kallam McDon-
ald, Assistant United States Attorney, Baltimore, Maryland, for
Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Balti-
more, Maryland, for Appellant. Lynne A. Battaglia, United States
Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Christopher Nwaigwe was convicted by a jury on seven counts of mail fraud in violation of 18 U.S.C. § 1341. Nwaigwe operated a student scholarship scheme, whereby he sent solicitation letters to students and collected a ten dollar fee in exchange for scholarship services which he did not provide. The District Court sentenced Nwaigwe under the Federal Sentencing Guidelines to thirty-six months imprisonment and three years supervised release.

Nwaigwe appeals his conviction and sentence. He makes three arguments: (1) the District Court erred by excluding expert witness testimony on small business practice, (2) the District Court erred by excluding a letter Nwaigwe wrote and sent to the Better Business Bureau, and (3) the District Court erred in determining the amount of loss for sentencing purposes as greater than $500,000. Nwaigwe asks this court to reverse his conviction and remand for further proceedings in the court below, or in the alternative to vacate his sentence and remand for resentencing. Because we find no error in the proceedings below, we affirm Nwaigwe's conviction and sentence.

I.

In 1992, defendant Christopher Nwaigwe rented three private mailboxes in Washington, D.C. and Baltimore, Maryland. He purchased labels containing the names and addresses of thousands of students from the American Student List Company. Nwaigwe mailed a solicitation letter to each student directed at the student's area of study (nursing or engineering, for example). The letters were sent on letterhead paper with titles such as the National Nursing Scholarship Program, or the National Engineering Scholarship Program. The program names were made up; no such national programs actually existed. The address on the letterhead listed a suite number, suggesting a bona fide

2

office, when in fact the address was that of the mailbox rented by Nwaigwe.

The letter informed the student that he or she had been selected by the program to benefit from various scholarship services. Applicants were promised an award of between $500 and $5,000 for the 1993 academic year. The program, according to the letter, would process the student's application and determine which scholarships were available. The students were instructed to return the application along with a $10 processing fee, which would be refunded if the student did not qualify for a scholarship. The letter was signed"Christopher Maige."

Everything about the solicitation was designed to look legitimate, but in fact, the solicitation was a scam. Nwaigwe collected hundreds of thousands of dollars in "processing fees" but did not deliver the promised services. When applicants requested the promised refund, they were ignored.

An individual who received a solicitation from Nwaigwe became suspicious and contacted the U.S. Postal Service. Postal inspectors interviewed Nwaigwe and he admitted to his involvement in the scheme. The inspectors forwarded their findings to the U.S. Postal Service Law Department. The Law Department entered into a consent agreement with Nwaigwe in September of 1993. In that agreement, Nwaigwe agreed to discontinue and abandon use of the promotional materials he had been using, or any materials that were substantially similar. In January of 1994, an Administrative Law Judge entered a cease and desist order based on the consent agreement.

Records of Nwaigwe's bank accounts reveal that revenues from the scholarship scheme took a marked dip from June to November of 1993, corresponding to the time that Nwaigwe was investigated by the Postal Service. Substantial deposits made up of $10 payments, however, resumed in December of 1993. As the government states in its brief, "Nwaigwe's adherence to his consent agreement was short-lived."

Nwaigwe continued his scholarship solicitation activities until 1996. He used slightly different forms from time to time, but the gist

3

of the scheme was essentially the same. Nwaigwe eventually maintained twelve mailboxes in Washington, D.C. and Baltimore, Maryland and sent solicitations to over 380,000 students.

In 1996, the Federal Trade Commission initiated a civil action against Nwaigwe based on his phony scholarship promotion. In that proceeding, Nwaigwe gave deposition testimony in which he admitted to using the alias "Christopher Maige." He also admitted to having no source of income other than that derived from the scholarship solicitations. Between 1992 and 1996, Nwaigwe deposited $522,210 in $10 checks and money orders made payable to various scholarship programs.

Nwaigwe was indicted by a grand jury on seven counts of mail fraud in violation of 18 U.S.C. § 1341. He was convicted on all counts in March of 1999. The District Court sentenced Nwaigwe under the Federal Sentencing Guidelines, with a ten-level increase in the base offense level under § 2F1.1(b)(1)(K) because the loss caused by the scam exceeded $500,000. Nwaigwe now appeals, claiming that defense evidence was improperly excluded, and that the government has not adequately proven loss in excess of $500,000.

II.

The trial court has broad discretion to determine whether to admit expert testimony. United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982). That determination will not be reversed absent a clear abuse of discretion. Friendship Heights Assocs. v. Vlastimil Koubek, 785 F.2d 1154, 1159 (4th Cir. 1986).

Nwaigwe sought to introduce expert testimony on"small business practice." The government introduced factual evidence that Nwaigwe used multiple mailboxes with "suite" addresses, multiple trade names, and a pseudonym -- all apparently questionable practices. Since the government asked the jury to infer an intent to deceive from these practices, Nwaigwe wanted to introduce expert testimony on the legitimate uses of such practices. He claimed that the expert testimony would give the jury specialized information from which it could better assess the inferences to be drawn from the factual evidence.

4

The real question is whether "expert testimony" was necessary in order for Nwaigwe to make his argument. In other words, is standard "small business practice" such a specialized and unfamiliar area of knowledge that the average juror would require information from an expert witness to better evaluate the practices in question? The District Court did not think so, and in our view that conclusion was reasonable.

Small business practice is not an area that is unfamiliar to jurors in the way that drug trafficking, banking practices, or securities transactions are. See United States v. Safari, 849 F.2d 891, 895 (4th Cir. 1988); United States v. Orr, 68 F.3d 1247, 1251 (10th Cir. 1995); Marx & Co., Inc. v. Diners Club, 550 F.2d 505, 509 (2d Cir. 1977). Expert testimony must be "helpful" to the trier of fact, Fed. R. Evid. 701 and 702, and if the facts being discussed by an"expert" are reasonably familiar to an average juror, then the expert testimony is not helpful. Thus, it was not an abuse of discretion for the District Court to exclude the expert testimony on "small business practice."

III.

Nwaigwe also sought to introduce records subpoenaed from the Better Business Bureau ("BBB"), including a letter that Nwaigwe wrote to the BBB which stated the following:

> Reference to your letter of February 4, 1999, please note that NNSP [the scholarship program] is a scholarship search service and we do not award money of any kind to anybody. We only provide sources of financial aid available to nursing students. Please provide this information to any body that might seek information about our company. Thank you.

Nwaigwe claims that this letter is evidence of his state of mind, and negates the government's claim that he acted with an intent to deceive the students to whom he sent solicitation letters. If Nwaigwe intended to deceive the students, he asks, why would he instruct the BBB to inform people who made inquiries that the program did not award money "of any kind to anybody." Under this theory, and for this limited purpose, Nwaigwe has claimed that the letter is not hearsay, since it is not offered to prove the truth of the matters asserted.

5

The District Court found, however, that "it's a self-serving statement that amounts to testimony that the government has no opportunity to rebut by cross-examination or inquire into." Nwaigwe declined to testify in his own defense, and the District Court was concerned that introducing the letter, which contains Nwaigwe's out of court statements, would allow Nwaigwe to testify without cross examination. Moreover, since the statement was clearly made in an attempt to deny any wrongdoing, the truth of the statements must be considered highly suspect. For these reasons, we think it was reasonable for the court to preclude Nwaigwe from introducing the letter as evidence. The District Court did not, therefore, abuse its discretion by ruling that the letter to the BBB was inadmissible.

IV.

This court reviews a factual determination made by the District Court for clear error. United States v. Wells , 163 F.3d 889, 900 (4th Cir. 1998). The presentence report recommended an enhancement of ten levels, based on an amount of loss in excess of $500,000, pursuant to U.S.S.G. § 2F1.1(b)(1)(K). The District Court accepted the loss calculation contained in the presentence report and sentenced Nwaigwe based on the ten-level enhancement. Nwaigwe now appeals his sentence, arguing that the government did not prove that the amount of loss actually exceeded $500,000.

At trial, the Postal Inspector testified that between 1992 and 1996, Nwaigwe made $522,210.00 in deposits to his bank account in the form of $10 checks and money orders made payable to the various bogus scholarship programs. This is ample evidence to support the District Court's factual finding that the amount of loss exceeded $500,000.

Nwaigwe now claims that only some of the solicitation letters were fraudulent ("version 1" of the letter), since one witness testified that she did receive a list of scholarship sources after sending in her $10 fee (in response to "version 2" of the letter). Nwaigwe thus claims that for all such "version 2" letters, some of which were followed by the promised list of scholarship sources, no loss was sustained. On this basis, Nwaigwe disputes the court's loss figure of $522,210.

6

Nwaigwe's argument has no merit. Even if the "version 2" letter was <u>less misleading</u>, it was still fraudulent and intended to deceive recipients. Many of the claims Nwaigwe made in his solicitation letters -- right down to the letterhead on the paper-- were patently false. He admitted as much in the original consent agreement reached with the Post Office. Yet he continued to send the letters and accept the fees without delivering on his promise of scholarship money for the students. Evidence that a list of scholarship sources was actually sent to a few recipients does not change the loss calculation. Every person who sent Nwaigwe a $10 fee was defrauded, whether they received a scholarship list or not.

Proof of the fraudulent nature of the entire scheme, therefore, along with the analysis of Nwaigwe's bank deposits, is sufficient to uphold the District Court's factual determination of the amount of loss caused by Nwaigwe's conduct. Because that determination is supported by evidence in the record, it is not clearly erroneous.

V.

Nwaigwe's conviction and the sentence imposed by the District Court are therefore

<u>AFFIRMED</u>.

7